Argued and submitted June 13, 1989, the decision of the Court of Appeals and the judgment of the trial court affirmed March 6, 1990

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## LES LEE MILLER,
*Petitioner on Review.*

(DC 880117M; CA A48812; SC S36077)

788 P2d 974

Henry M. Silberblatt, Salem, argued the cause for petitioner on review. With him on the petition was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Linde,** Carson, Jones, Gillette, Van Hoomissen, and Fadeley, Justices.

JONES, J.

Gillette, J., filed a concurring opinion.

Carson, J., filed a dissenting opinion in which Fadeley, J., joined in part.

Fadeley, J., filed a dissenting opinion.

---

** Linde, J., retired January 31, 1990.

### JONES, J.

The issue is whether a defendant may be convicted of violating ORS 813.010 without proof of a culpable mental state as to the element of being under the influence of an intoxicant. We hold that being under the influence of an intoxicant is a strict liability element and, therefore, affirm the decision of the Court of Appeals.

On January 16, 1988, an Oregon State Police officer arrested defendant for Driving Under the Influence of Intoxicants (DUII). An Intoxilizer test registered defendant's blood alcohol content (BAC) at 0.12 percent. Defendant waived his right to a jury trial, and the trial court found defendant guilty of DUII.

Defendant maintains that he had not been aware that he ingested an intoxicating beverage prior to driving on the date in question. Defendant states that at trial he made the following offer of proof:

> "Defendant stated that he had slept all [day on January 16, 1988]. About 9:00 p.m. he went out and found his friend at McDonald's. His friend had had about eight or nine beers, and so defendant did not want him to drive. They got in defendant's car, drove around town, got bored, rented some movies and then went to the friend's house to watch them. Defendant was sick, not having eaten anything for almost two days. His throat hurt, he couldn't breathe and couldn't taste anything. He said he didn't want to drink any beer. By 1:30 or 2:00 a.m., they had finished the first movie. They had been drinking coffee so as to stay awake while they watched the movies. Defendant's friend fixed him a special coffee drink that had a minty taste, and defendant drank a full coffee cup of it. His friend explained that this was coffee with some flavoring in it, a sort of home remedy that would make defendant feel better. Defendant did not know that the coffee drink contained any alcoholic beverage. He learned about that the next day, when he talked to his friend about the drink."

Defense counsel argued as follows to the trial court:

> "Your Honor, * * * it does seem as a matter of fairness and due process of law that somebody should have to knowingly do something wrong or at least be criminally negligent * * *. There should be some kind of culpable mental state * * *."

The trial court stated:

"Well, there can be no question but what the appellate judges obviously have differences of opinion about this issue. You cannot get any closer in terms of decision-making at the appellate level than the court's word in trying to decide this issue. And I suspect that, and I have some reservations about the fairness of it also, but I also agree that the court must apply the principles of what these cases stand for. The cases appear to stand for the proposition that the circumstances under which somebody became intoxicated, whether they were voluntary or not, the objection that the court would draw as a result of these cases would be one of relevance. If there's no state of mind requirement, then it doesn't make any difference whether the person became intoxicated involuntarily or voluntarily. * * * I think I am bound to follow what these cases appear to stand for. The ruling that the court would make is that the cases of *Maguire* and *Bunch* [both *infra*] do not permit the defendant to present the defense he's indicating here, that is, he became involuntarily intoxicated by someone putting in his tea alcohol that he was unaware of. That will be the court's ruling."

Defendant appealed to the Court of Appeals, arguing that "it should be appropriate for defendant to present as a defense that his status of being under the influence of intoxicants was not manifested in a voluntary manner, that is, *that he lacked the requisite culpable mental state.*" (Emphasis added.) The Court of Appeals affirmed by declining to reconsider its decisions holding that DUII is a strict liability crime (*State v. Maguire,* 78 Or App 459, 717 P2d 226 (1986), *affirmed without opinion by an equally divided court,* 303 Or 368, 736 P2d 193 (1987), and *State v. Bunch,* 87 Or App 386, 742 P2d 74 (1987)). *State v. Miller,* 95 Or App 439, 769 P2d 788 (1989).

■ ■ ORS 161.105 delineates the circumstances under which a culpable mental state is not required for conviction. ORS 161.105 provides in pertinent part:

"(1) Notwithstanding ORS 161.095, a culpable mental state is not required if:

"* * * * *

"(b) An offense defined by a statute outside the Oregon Criminal Code *clearly indicates* a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof.

"(2) Notwithstanding any other existing law, and unless a statute enacted after January 1, 1972, otherwise provides, an

offense defined by a statute outside the Oregon Criminal Code that requires no culpable mental state constitutes a violation." (Emphasis added.)

The DUII statute, ORS 813.010, provides:

"(1)    A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a)    Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b)    Is under the influence of intoxicating liquor or a controlled substance; or

"(c)    Is under the influence of intoxicating liquor and a controlled substance.

"(2)    A person convicted of the offense described in this section is subject to ORS 813.020 in addition to this section.

"(3)    The offense described in this section, driving while under the influence of intoxicants, is a Class A misdemeanor and is applicable upon any premises open to the public."

Because ORS 813.010 was enacted after January 1, 1972, and is outside the Criminal Code, DUII is a strict liability crime if ORS 813.010 *"clearly indicates* a legislative intent to dispense with any culpable mental state requirement." ORS 161.105 (emphasis added). Although the legislature has not provided criteria concerning what constitutes a clear indication of legislative intent, this court has addressed that issue in two recent decisions.

In *State v. Cho,* 297 Or 195, 681 P2d 1152 (1984), the defendant was convicted of violating ORS 498.022, which prohibited the purchase or sale of "any wildlife, or any part thereof." Violation of the noncriminal code statute constituted a misdemeanor, but the statute contained no provision requiring a culpable mental state. The court held that ORS 498.022 required allegation and proof of a culpable mental state because the statute did not clearly indicate a legislative intent to dispense with such a requirement. 297 Or at 202. The court stated that "the mere enactment of a crime without an expressly required culpable mental state is insufficient to

establish such a clear indication," adding that "the substantial state interest in the preservation of wildlife was insufficient to make the breach of ORS 498.022 a strict liability crime." 297 Or at 201.

In *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982), the defendant was convicted of Driving While Suspended (DWS), in violation of *former* ORS 487.560. The court determined that the language of *former* ORS 487.560, coupled with its legislative history, clearly indicated a legislative intent to dispense with a culpable mental state requirement. 293 Or at 585. The court began with an examination of *former* ORS 487.560(1), which defined the crime as (1) driving a motor vehicle on the highway (2) during a period while the license is suspended. 293 Or at 582. The court noted that the language of *former* ORS 487.560(1) suggested that proof of these two elements alone, without reference to a culpable mental state, was enough to sustain a DWS conviction. The court, however, stated that the DWS definition alone was insufficient to constitute a clear indication of legislative intent.

The court did find the necessary intent to dispense with a culpable mental state requirement in other subsections of *former* ORS 487.560. The court reasoned that by making lack of notice of suspension an affirmative defense, the legislature demonstrated a clear intent that DWS be a strict liability offense. Thus, the court concluded that the statutory provisions considered together "clearly indicate that the legislature intended that the state, in its case in chief, need not prove any culpable mental state, but that the defendant might avoid conviction for conduct which is otherwise criminal by establishing one of the defenses enumerated in ORS 487.560(2)(b)." *State v. Buttrey, supra,* 293 Or at 583-84.

*Buttrey* also relied upon the legislative history of ORS 487.560 in finding that the legislature clearly intended to dispense with a culpable mental state requirement for DWS. The Project Director of the Interim Committee on Judiciary testified as follows concerning a 1975 revision to the DWS statute:

> "One of the changes made was with respect to the question of whether the defendant knew of his suspension. Proof that he knew of his suspension would not be an element of the offense, but failure to receive notice would be an affirmative defense

which would shift the burden to the defendant to establish the defense by preponderance of the evidence." Minutes, House Committee on Judiciary, May 5, 1975, at 2 (quoted in *State v. Buttrey, supra,* 293 Or at 584).

Thus, by examining the DWS statute's language as well as its legislative history, the court was able to conclude that DWS was a strict liability offense.

The DUII statute differs from the DWS statute in *Buttrey* in that ORS 813.010 does not contain affirmative defenses, nor does it provide any other clear textual indication of legislative intent concerning a mental state requirement. The legislative history of the DUII statute, ORS 813.010 and its predecessor, however, is helpful in determining whether the legislature ever intended that DUII should require a culpable mental state.

The offense of DUII does not nor has it ever required proof of a culpable mental state. The statute as enacted in 1917, Or Laws 1917, ch 29, § 1, has been amended several times. Never in the 70-year history of this state's legislation has one word been written in any DUII statute to require such proof. Never has this court interpreted any DUII statute to require such proof. We have not found where any witness appearing before any legislative committee considering DUII statutes asserted that a culpable mental state would be required for any element of the offense.

DUII is an offense defined outside the Oregon Criminal Code, and the legislative history, in the sense that no one ever considered such a procedural stumbling block, indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any of its material elements.

It seems preposterous that, with the legislative effort to make DUII easier to prove in almost every session over the last two decades, any legislator could ever have intended that a drunken driver could assert the defense that "I was so drunk I didn't know what I was doing." In these days of intense pressure on the legislature, from such groups as Mothers Against Drunk Driving, to get drunken drivers off Oregon highways, and the legislative actions reducing the BAC level for conviction of drunken drivers in Oregon to one of the lowest in the

nation, it would be highly unusual for any responsible legislator to intend or publicly assert an intention that DUII requires proof of a culpable mental state.

It is apparent that following the 1971 amendment the legislature should have specifically spelled out its intention that DUII does not require a culpable mental state. But this legislative oversight does not justify a substantial dismantling of the legislative effort to improve public safety by getting tougher on DUII offenders.

Having a certain BAC or being under the influence is a status, and a person's mental state has nothing to do with whether that status exists. The statute requires only that the state prove that a defendant had the status while driving, not that the defendant knew or should have known of it. One who drives after drinking intoxicating liquor takes the risk that his BAC violates the statute. The legislature made DUII an offense to keep dangerous drivers off the road. It was undoubtedly aware that experience has shown that dangerously intoxicated drivers often insist, at times sincerely, that the liquor they drank did not affect their driving ability. The statute, in the context of its history and surrounding circumstances, clearly indicates a legislative intent that the BAC element of DUII does not involve any culpable mental state.

The offense of DUII may be proven two ways: (1) the driver had .08 percent or more by weight of alcohol in the blood; or (2) the driver was under the influence of intoxicating liquor and/or a controlled substance. These are not two separate offenses, but two methods to prove the one crime of DUII. *See State v. Kizer,* 308 Or 238, 779 P2d 604 (1989). Because the BAC element of DUII does not require a culpable mental state, reason dictates that the legislature would not bifurcate the alternative methods of proving DUII, one with and one without a culpable mental state.

There are additional considerations demonstrating that the legislature never intended a culpable mental state for either method of proving DUII. Facially, ORS 161.105(1)(b) and (2) may appear to require proof of some mental state for conviction of DUII. Like any other statute, however, these provisions need to be viewed in the appropriate setting.

The 1971 legislature adopted the new Oregon Criminal Code based on the extensive work of the Criminal Law Revision Commission (the Commission). *See* Oregon Criminal Law Revision Commission, Final Report (1971). ORS 161.105 was part of that new Code. Or Laws 1971, ch 743, § 9. It is apparent that the Commission did not contemplate the application of ORS 161.105 to DUII because the Commission's minutes do not mention DUII or any of the other "serious traffic offenses," *i.e.,* driving while suspended, reckless driving, attempting to elude a police officer, or hit and run. *Former* ORS 487.530 (renumbered ORS 153.500(5) and renamed "major traffic offense," with the addition of violation of habitual offender order). This, however, is not surprising. The Commission was attempting to rewrite the *criminal* code, not the *motor vehicle code.* A rewrite of the latter would have to wait until 1975. Or Laws 1975, ch 451.

What the Commission *was* aiming at with the provision that would become ORS 161.105 was the gaggle of miscellaneous offenses located throughout the Oregon Revised Statutes known affectionately as "the .990 crimes." These were 1ffenses tacked on to the end of statutory chapters devoted to substantive concerns other than the criminal law; because they normally were located at the end of such chapters, they commonly had section numbers ending in ".990" or ".995." The Commission did not consider, and the legislature that enacted the Code did not contemplate, the crime of DUII in this regard. Had either entity done so, it is highly unlikely that DUII would have required a culpable mental state for any element of that crime.

The present version of DUII had its genesis in the 1975 Motor Vehicle Code, enacted only four years after the Criminal Code. Or Laws 1975, ch 451, § 87. That the legislature re-enacted the definition of DUII so close after enacting ORS 161.105, while still omitting any culpable mental state, also provides a proper basis for concluding that the legislature did not intend any such mental element to apply — a conclusion buttressed by the fact that two of the other four "serious traffic offenses" re-enumerated at the same time *did* prescribe particular culpable mental states. *See* Or Laws 1975, ch 451, §

90 (reckless driving); and Or Laws 1975, ch 451, § 91 (attempting to elude).[1]

For all the reasons expressed above, we conclude that the being-under-the influence-of-an-intoxicant element of DUII, ORS 813.010, requires no proof of a culpable mental state, and we affirm the decision of the Court of Appeals.

**GILLETTE, J.,** concurring

I join the opinion of the court. Although the dissent's view also is plausible, I am persuaded by the majority and more particularly by the fact that the legislature *reenacted* the DUII statutes *sans* any reference to a culpable mental state *after* the creation of ORS 161.105. That is a sufficiently clear legislative message for me.

I write separately, however, in order to emphasize a point made by the dissent that I believe to be correct and important: Like Justice Carson, I believe that *State v. Cho,* 297 Or 195, 681 P2d 1152 (1984), was wrongly decided. (309 Or at 381.) Issues of *stare decisis* aside, I doubt that a majority of this court now would decide the *Cho* issue the same way. We do not have to reconsider *Cho* today, however, because the majority's opinion does not rely on its holding.

I concur.

**CARSON, J.,** dissenting.

The issue in this case is whether the trial court erred in preventing defendant from asserting the defense of involuntary intoxication to a charge of driving under the influence of intoxicants (DUII).[1] Based upon the precedents of this court, I believe that the trial court did so err, and I accordingly dissent.

---

[1] While common sense dictates that a necessary element of hit and run is knowledge that an accident has occurred, *former* ORS 483.602 and .604 (hit and run) did not expressly require a culpable mental state. It is worth noting that no Oregon appellate court addressed whether *former* ORS 483.602 and .604 required a culpable mental state. In *State v. Reynolds,* 229 Or 167, 172-73, 366 P2d 524 (1961), this court was not required to decide that issue, and in *State v. Corpuz,* 49 Or App 811, 819-20, 621 P2d 604 (1980), the Court of Appeals faced a similar but separate issue.

[1] The issue is not, as stated by the majority, whether a defendant may be convicted of violating ORS 813.010 (driving under the influence of an intoxicant) without proof of a culpable mental state with reference to the element of being under the "influence of an intoxicant." 309 Or at 364.

Resolution of this case is hinged to a determination of whether the statute purportedly violated by defendant, ORS 813.010, is a "strict liability" crime (also referred to as an "absolute liability" crime or a "liability-without-fault" crime). If it is, no proof of a culpable mental state is required, and, therefore, whether the ingestion of intoxicants was voluntary or involuntary is irrelevant.

## I. LEGISLATIVE REQUIREMENT OF CULPABLE MENTAL STATE

### A. General Legislative Policy.

Nearly two decades ago, the legislature specifically adopted a legislative policy generally requiring a culpable mental state as a prerequisite to a finding of criminal conduct. In 1971, when the legislature passed a comprehensive revision of the Oregon Criminal Code, it expressly stated that one of the general purposes of the process was "[t]o define the act or omission *and the accompanying mental state* that constitute each offense and limit the condemnation of conduct as criminal when it is without fault." ORS 161.025(1)(d). (Emphasis added.) Commenting on this provision, The Oregon Criminal Law Revision Commission (the Commission) stated:

> "Paragraph (d) is intended to make it clear that there is a legislative policy against creating liability without fault crimes (the so-called regulatory, public welfare, public tort or absolute liability crimes), with heavy penalties. This provision should be considered in connection with Article 7 [now ORS 161.505 to 161.585] which sets up the violation classification and in connection with the general requirements for culpability set out in Article 2 [now ORS 161.085 to 161.125]." Commentary to Proposed Oregon Criminal Code § 2, 2 (1970) (the Commentary).

The Commentary further states:

> "The Commission follows the Model Penal Code in expressing a policy adverse to use of 'strict liability' concepts in criminal law, whenever the offense carries a possibility of sentence of imprisonment.
>
> "This position relates not only to offenses defined by the criminal code itself, but covers the entire body of state law, so far as penal sanctions are involved. As noted by the Model Penal Code commentators, in the absence of minimal culpability, the law has neither a deterrent nor corrective nor

an incapacitative function to perform. They support this approach by stating:

"'It has been argued and the argument undoubtedly will be repeated, that absolute liability is necessary for enforcement in a number of areas where it obtains. But if practical enforcement cannot undertake to litigate the culpability of alleged deviation from legal requirements, we do not see how the enforcers rightly can demand the use of penal sanctions for the purpose. Crime does and should mean condemnation and no court should have to pass that judgment unless it can declare that the defendant's act was wrong. This is too fundamental to be compromised. The law goes far enough if it permits the imposition of a monetary penalty in cases where strict liability has been imposed.'" Commentary, § 11 at 11.

Having stated the general policy, the legislature turned to specifics. ORS 161.095 provides:

"(1) The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act * * *.

"(2) Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

The statutory scheme, together with the detailed commentary of the Commission, demonstrates the clear and unequivocal policy that all crimes must include a culpable mental state unless ORS 161.105 contains an exception.[2] By focusing on the exceptions to this requirement, the majority implicitly accepts the general legislative policy.

*B.  Exceptions to the Legislative Policy.*

With the context of the general rule supplied, a discussion of the exceptions becomes more meaningful. The legislature delineated exceptions to the general policy requiring a

---

[2] The majority also ignores ORS 161.115, which provides, in part:

"(1) If a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state.

"(2) Except as provided in ORS 161.105, if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

culpable mental state in ORS 161.105,[3] the application of which is not as simple as the majority would suggest. The interplay of the provisions of ORS 161.105 can be analyzed in at least three ways: the majority's approach, an alternative approach, and the *Cho*[4] approach.

■ The Majority Approach.

The majority erroneously concludes that ORS 813.010 requires no proof of a culpable mental state as to the "being-under-the-influence-of-an-intoxicant element of DUII." 309 Or at 371. In reaching this socially desirable result, the majority makes at least three critical mistakes in its analysis: (1) It substantially disregards the longstanding, significant legislative policy (discussed above) that generally requires a culpable mental state for conviction of a crime; (2) it focuses on the wrong section of a statute to explain its rationale and, then, misapplies that section; and (3) it ignores the impact of the analysis required by our decision in *State v. Cho*, 297 Or 195, 681 P2d 1152 (1984).

The majority focuses on subsection 1 of ORS 161.105. Subsection 1 dispenses with a culpable mental state if:

(a) the offense is merely a violation (the instant offense is not; it is a Class A misdemeanor); or

(b) the offense is outside the Oregon Criminal Code (the instant offense is) and the statute *clearly indicates* a

---

[3] ORS 161.105 provides:

"(1) Notwithstanding ORS 161.095, a culpable mental state is not required if:

"(a) The offense constitutes a violation, unless a culpable mental state is expressly included in the definition of the offense; or

"(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof.

"(2) Notwithstanding any other existing law, and unless a statute enacted after January 1, 1972, otherwise provides, an offense defined by a statute outside the Oregon Criminal Code that requires no culpable mental state constitutes a violation.

"(3) Although an offense defined by a statute outside the Oregon Criminal Code requires no culpable mental state with respect to one or more of its material elements, the culpable commission of the offense may be alleged and proved, in which case criminal negligence constitutes sufficient culpability, and the classification of the offense and the authorized sentence shall be determined by ORS 161.505 to 161.605 and 161.615 to 161.655."

[4] *See State v. Cho*, 297 Or 195, 681 P2d 1152 (1984).

legislative intent to dispense with any culpable mental state.

Assuming, as does the majority, that the second paragraph of the subsection is the statute at issue, the requirement is that *the statute* clearly indicate a legislative intent to dispense with a culpable mental state.[5] The paragraph does not permit an unbridled examination of legislative history, circumstances surrounding the legislation (then, now, or in between), or legislative acquiescence in appellate case law.

The question, under ORS 161.105(1)(b), is whether a statute outside the criminal code clearly indicates an intent to dispense with a culpable mental state requirement. What is a "clear indication"? Epistemologically, one might argue, as does the majority, that the failure to *include* clearly indicates an intent to *dispense*. But that argument has been rejected by this court, even in cases where the legislature has set a criminal penalty (as here), because "[t]he mere enactment of a crime without an expressly required culpable mental state is insufficient to establish such a clear indication." *State v. Cho, supra,* 297 Or at 201. Although the majority dutifully recognizes that statement in *Cho,* it does not explain why the statement does not end its analysis under ORS 161.105(1)(b).

The other case cited by the majority, *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982), likewise does not support its conclusion. In *Buttrey,* a majority of this court determined "that the language of [*former*] ORS 487.560 [driving while suspended] itself clearly indicates a legislative intent to dispense with a culpable mental state requirement, and the legislative history puts the matter beyond question." 293 Or at 582. However, to reach that conclusion, the court examined the structure of the entire DWS statute, including the affirmative defenses provided therein, and found the requisite legislative intent. In fact, the *Buttrey* court pointed out that the part of the statute defining the offense does not, by itself, "clearly [indicate] a legislative intent to dispense with any culpable mental state requirement." *Id.* The majority admits that this case is distinguishable from *Buttrey:* "ORS 813.010 does not

---

[5] ORS 161.105(1)(b) actually provides that a culpable mental state is not required if "[a]n offense * * * clearly indicates a legislative intent" to dispense with a culpable mental state. The only sensible reading of this provision is that the *statute* must dispense with a culpable mental state requirement.

contain affirmative defenses, nor does it provide any other *clear textual indication* of legislative intent concerning a mental state requirement." 309 Or at 368. (Emphasis added.)

The majority thus finds support for its conclusion, not from a circumspect examination of the DUII statute as required by ORS 161.105(1)(b), but from a host of other sources, none of which is appropriate to consult.

(a) History.

The majority asserts that the offense of driving under the influence never has required a culpable mental state "in the 70-year history of this state's legislation" on DUII. 309 Or at 368. Correct as that statement may be, it does not face squarely, or at all, the clear legislative policy enunciated in 1971, except to note that "the legislature should have specifically spelled out its intention that DUII does not require a culpable mental state." 309 Or at 369. Agreed.

(b) Oversight.

The majority suggests that the failure to clearly indicate that no culpable mental state was required was a legislative oversight. Indeed, it may well have been. But the legislature has spoken to oversight problems[6] and specifically has limited the judiciary's curative powers.

As a further reenforcement of its position of legislative oversight, the majority reckons that the Commission did not contemplate the application of the statute at issue to DUII, or other " 'serious traffic offenses.' " 309 Or at 370. That may be, but the Committee on Judiciary, which rewrote the Oregon Vehicle Code in 1975 (to which the majority refers), did so contemplate. Of the five serious traffic offenses, two specifically provide for a culpable mental state (dangerous driving and eluding a police officer).[7]

---

[6] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

[7] The official commentary to the revised code states:

"The culpability definitions set forth in the Oregon Criminal Code would be adopted by the proposed draft. See, especially, §§ 89 & 90 [dangerous driving]." Commentary to Proposed Oregon Vehicle Code § 86, 68 (1975).

(c) Outside the Criminal Code.

The majority opinion apparently takes comfort in the suggestion that the 1971 Legislative Assembly was writing a *"criminal* code, not the *motor vehicle code."* 309 Or at 370. (Emphasis in original.) One can hardly review ORS 161.105 without reaching the conclusion that the 1971 Legislature spoke to crimes beyond the confines of the criminal code, its specific referent in ORS 161.105(1)(b) and (2). Nor should the majority take solace in its ".990 crimes" explanation. 309 Or at 370. At the time the Commission was drafting the proposed revision, at the time the legislature enacted the revision, and until 1975, the DUII statute *was* a ".990" crime. *See former* ORS 483.992 (*repealed by* Or Laws 1975, ch 451, § 291).

To summarize, even assuming that the majority is applying the correct provision of ORS 161.105 to the issue at hand, the conclusion it reaches—that the DUII statute "clearly indicates a legislative intent to dispense with any culpable mental state requirement"—is incorrect.

■ An Alternate Approach.

The fundamental difficulty with the majority opinion is its focus on the second paragraph of the first subsection of the exception statute, ORS 161.105.[8] That statute, in subsections (1)(b) and (2), provides two *different* approaches for ascertaining whether a statute outside the criminal code is a strict liability statute.[9] The message I receive from the first two subsections of ORS 161.105 is, in simplified terms, in dealing with statutes "outside the Oregon Criminal Code":

(a) For statutes in existence on January 1, 1972 (the effective date of the Oregon Criminal Code), a culpable mental state may be dispensed with if the legislative intent to do so is "clearly indicated." ORS 161.105(1)(b).

(b) For statutes enacted after January 1, 1972, an offense

---

[8] The majority essentially "reads out" ORS 161.105(2). *See* Comment, *Strict Liability and Criminal Sanctions: The 1971 Revisions to the Oregon Criminal Code,* 13 Will L J 365, 382 (1977) ("The provision [ORS 161.105(2)] should be repealed or construed in a way that avoids confusing and inconsistent results."). However, this court is bound to construe a statute in a manner which will give effect to all of its provisions. ORS 174.010.

[9] A third approach, not relevant to offenses outside the criminal code, appears as ORS 161.105(1)(a).

that requires no culpable mental state constitutes a violation, unless the statute otherwise provides. ORS 161.105(2).

Thus, if the statute was in existence on January 1, 1972, ORS 161.105(1) applies; if the statute was enacted after January 1, 1972, ORS 161.105(2) applies. Because the statute at issue specifically falls into the category established by subsection (2) (and not subsection (1), as discussed by the majority), the test is not "clearly indicates an intent to dispense" but "otherwise provides."[10]

Subsection (2) says to me that in statutes enacted outside the criminal code after January 1, 1972, wherein no culpable mental state is required (and none is mentioned in ORS 813.010), the offense is a violation, unless the legislature "otherwise provides." Were I writing on the proverbial clean slate, I would assert that the legislature, by establishing that violation of the DUII statute is a Class A misdemeanor, has otherwise provided; that is, the exception referent is to constituting a violation, not to the presence or absence of a culpable mental state requirement. Thus, under ORS 161.105(2)—which is the applicable provision—DUII is a strict liability crime because (a) the statute requires no culpable mental state, and (b) the legislature has otherwise provided that DUII is a Class A misdemeanor. Under this approach, the legislature has done all it must do to make a post-1971 statute outside the criminal code a strict liability crime. Unfortunately, however, I am not writing on a clean slate and that conclusion is precluded by our decision in *State v. Cho, supra,* applying a two-part analysis.

*Cho* held that a statute enacted after January 1, 1972, must both provide that the offense is not a violation *and* clearly indicate a legislative intent to dispense with the culpable mental state requirements. *State v. Cho, supra,* 297 Or at 200.[11] The effect is to combine the separate statutory require-

[10] The Commentary supports that argument by stating:

"Subsection (2) applies the minimal culpability requirements to statutes outside the criminal code that may be enacted after its effective date. However, the Legislature will have flexibility to specifically provide otherwise, but in the absence of a statute that provides to the contrary, an offense that requires no culpable mental state will constitute a violation." Commentary, § 9 at 9.

[11] *Cho* was followed, without further analysis, in *State v. Guthrie,* 304 Or 52, 741 P2d 509 (1987).

ments of ORS 161.105(1)(b) with 161.105(2). The primary
rationale stated was that ORS 161.105(2) does not address
whether a culpable mental state is required, and, conse-
quently, does not provide an exception to ORS 161.095(2) or
161.115(2). However, if I am correct in my assertion of the
independent status of ORS 161.105(2), then the two general
policy statements in ORS 161.095(2) and 161.115(2) are not to
be applied because each subsection specifically acknowledges
the overriding vitality of ORS 161.105 by announcing that
both subsections operate "[e]xcept as provided in ORS
161.105." Stated another way, the two subsections at issue
speak to two different time frames: (1) pre-1972 (ORS
161.105(1)(b)) and (2) post-1971 (ORS 161.105(2)). Effect
should be given to each, independent of the other. Because of
our decision in *Cho*, we are bound—short of overruling
*Cho*—by its two-part analysis.

■ The *Cho* Analysis.

In *State v. Cho, supra,* this court correctly began its
analysis with ORS 161.105(2):[12]

"Because these statutes were enacted after January 1,
1972, and are outside the Oregon Criminal Code, ORS
161.105(2) must be applied to determine whether the offense
* * * is a violation or a crime. That subsection is clear. The
offense is a violation unless the legislature has otherwise pro-
vided. That is exactly what the legislature has done. It has
provided that this offense is a Class A misdemeanor. That
does not answer the question, however, as to whether a culpa-
ble mental state is an element to be pleaded and proved to
establish a breach of these * * * laws." 297 Or at 199.

To determine whether a culpable mental state is required, the
court then looked to ORS 161.105(1)(b). In concluding that
the wildlife law involved in that case required proof of a culpa-
ble mental state, the *Cho* court embraced the following
approach:

"* * * There is only one way in Oregon to establish a crime
outside the criminal code which does not require a culpable
mental state. That is for the legislature to enact a statute,
after January 1, 1972, which provides that an offense is not a
violation, *and* for the offense to clearly indicate a legislative

---

[12] *See* n 3, *supra,* for the text of the statute.

intent to dispense with the culpable mental state requirement." 297 Or at 200. (Emphasis in original.)

Thus, in *Cho,* this court determined that for a post-1971 statute outside the criminal code, both ORS 161.105(2) and 161.105(1)(b) must be applied to determine whether it requires a culpable mental state.

Under *Cho,* then, the question boils down (as it does under the majority's analysis) to whether the statute "clearly indicates" a legislative intent to dispense with a culpable mental state requirement. For the reasons stated above, I submit that the majority has reached the wrong conclusion under *Cho.* Because *Cho* states the current law in Oregon, I have set forth below what I believe to be the proper *Cho* analysis.

ORS 813.010 does not "clearly indicate" a legislative intent to dispense with a culpable mental state requirement, because "[t]he mere enactment of a crime without an expressly required culpable mental state is insufficient to establish such a clear indication." *State v. Cho, supra,* 297 Or at 201. The DUII offense is a misdemeanor, not a violation, ORS 813.010(3), and thus, even though the "statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required." ORS 161.115(2).

DUII has two material elements:[13] (1) driving a vehicle (2)(a) while under the influence of intoxicating liquor and/or a controlled substance, or (b) with a BAC of .08 percent or more. *See* UCrJI No. 2704; *cf. State v. Buttrey, supra,* 293 Or at 582 (two elements to the crime of DWS). To be guilty of DUII, a person must act "with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."[14] ORS 161.095(2). At a minimum, the state must prove that a defendant acted with criminal negligence in respect of both elements of DUII. ORS

---

[13] Neither the majority nor the litigants have performed an elemental analysis of the crime of DUII. Although the majority states its holding in terms of the "being-under-the-influence-of-an-intoxicant element of DUII," it generally treats the issue as whether DUII is a strict liability *crime.* To add clarity to our analysis, we should always determine the elements of the crime at issue and the mental state requirement for each element. *See e.g.,* ORS 161.115(1), set out in n 2, *supra.*

[14] As examples of elements which do not necessarily require a culpable mental state, the Commentary lists "the statute of limitations, jurisdiction, venue and the like." Commentary, § 8 at 9.

161.115(2). In respect of the circumstance of being intoxicated or having a BAC of .08 percent or more, proof of criminal negligence will suffice.[15] Because the concept of a criminally negligent conduct element is undefined, the state must prove at least a knowing mental state regarding the element of driving.[16]

This court's decision in *Cho*, together with the strong policy of *stare decisis*, compels me to dissent in this case. Under *Cho*, there is no way to conclude that DUII is a strict liability crime. Defendant in this case wanted to argue that he was not criminally negligent in respect of the element of being under the influence (while he drove). Whether defendant had a culpable mental state was at issue and his defense of lack of culpability should have been heard. The trial court erred in not allowing that defense.

## II. CONCLUSION

Were I writing for the majority, I would analyze this issue as set forth in section I.B.2., above. Even though that analysis requires overruling *State v. Cho*—an opinion in which I joined—I am now convinced that the alternative approach is the only approach that works to make each part of the statute have meaning. However, a lone dissenter does not have the power to overrule a case, and accordingly, I must treat it as the law in Oregon. It is unfortunate that the majority has inexplicably refused either to perform a complete analysis under *Cho* (which would lead to a contrary conclusion) or to overrule that case.

Fadeley, J., joins in this dissent, other than part I.B.2.

---

[15] ORS 161.085(10) provides:

" 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Being under the influence of an intoxicant or having a BAC of .08 percent or more is a circumstance. *See* Robinson & Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond,* 35 Stan L Rev 681, 697 (1983).

[16] Note that criminal negligence is defined by ORS 161.085(10), *see* n 15, *supra*, with respect to circumstantial elements, but not with respect to conduct elements. *See generally* Robinson & Grall, *Element Analysis in Defining Criminal Liability, supra*.

**FADELEY, J.,** dissenting.

I join in the dissent of Carson, J., other than part I.B.2. I join that dissent because in the circumstances of this case he correctly answers the governing question: Did the legislature "clearly indicate" an intention to dispense with all reasoned defenses to a DUII charge when the only indicator of legislative intent is legislative silence? As *Berry v. Branner,* 245 Or 307, 311, 421 P2d 996 (1966), states: "Legislative inaction is a weak reed upon which to lean in determining legislative intent." The criminal code interpretive guidelines still strongly favor culpability as a necessary element on the road to criminal punishment unless the legislature "clearly indicates" otherwise.

I also dissent for the additional reasons expressed here. As far as this court knows, defendant has been convicted of a crime because he drank a cup of coffee handed to him by a friend and thereafter drove a vehicle on the public way. After deliberation, I simply can't bring myself to believe that the legislature intended to prevent any jury consideration and determination of a defense of the character that defendant asserts in this case.

The majority's holding produces grave constitutional consequences. Criminal defendants may be deprived of a meaningful jury trial, as the practical result of the majority's rule, because they will be prevented from presenting a defense showing that they are not criminally responsible in the parameters of the case. *See Wardius v. Oregon,* 412 US 470, 98 S Ct 2208, 37 L Ed 2d 82 (1973).

Under the majority's analysis, the only things defendant could have done to avoid becoming a criminal with a record were to say no thanks for the coffee or to never drive after drinking any liquid the exact origin or contents of which the imbiber does not personally know. That analysis makes acts criminal in a way that impairs the guarantee to trial by jury in criminal cases.

Five weeks after his 18th birthday, defendant was cited for driving under the influence. He was driving. The breathalyzer indicated his blood-alcohol content was above the statutory limit of .08 percent. These two facts convict, the majority holds. I agree, if any alcohol was ingested knowingly,

which it may not have been in this case. That is what a jury must decide.

Defendant attempted to prove at trial that he had neither knowingly nor voluntarily consumed any intoxicants before driving. He claimed that his volition was not exercised to place any alcohol in his body. Defendant's counsel asserted the right to submit the defense to the fact finder for a fact determination as a matter of "fairness and due process of law." The trial judge ruled as a matter of law that the trier of fact could not hear and could not consider the truth or falsity of that assertion. It didn't matter on the question of criminal guilt, the judge ruled as a matter of law *after* stating: "I have some reservations about the fairness of it also."

In a criminal context the Oregon Constitution, not to mention federal provisions, guarantees certain fundamental process. Article I, section 11, provides in part that "the accused shall have the right to public trial by an impartial jury." The provision guarantees that the accused may be heard. ORS 136.320 contemplates that criminal guilt or innocence shall only be determined by a jury, or other fact finder if a defendant waives a jury. *Compare* Or Const, Art I, § 16 *with* ORS 136.310 and 136.320. The fact finder may not be legislatively instructed to enter a guilty verdict no matter what the defense claimed by the defendant may be. Otherwise, the jury-trial guarantee becomes meaningless. Otherwise, the legislature or, as in this case under the majority, the court usurps the role of the jury in an offense designated as a misdemeanor, *i.e.,* a crime. *Cf. Mitchell v. Superior Court,* ___ Cal3d ___, 265 Cal Rptr 144, 783 P2d 731, 737 (1989).

I believe we must notice the constitutional issue in this case, or countenance a criminal conviction of defendant which may not be founded on any reprehensible conduct or any acts he could know to avoid. *See* Or Const, Art VII (Amended), § 3. The following questions might frame that issue.

To what extent may the legislature or this court constitutionally prevent a jury from exercising any meaningful role in determining whether a person shall be declared to be a criminal or otherwise held criminally responsible by proscribing, as a crime, a status or act lacking any volitional component on the part of an accused defendant? May a jury be

prevented from making a reasoned moral response to the question of criminal responsibility of a defendant found in a non-volitional status or performing a non-volitional act without knowledge that the act contributes to the person coming within the non-volitional status?

The majority's labeling of an offense as a "strict liability crime" without distinguishing between the types of conduct or status proscribed seems to both prevent the jury's reasoned moral response to defendant's actual conduct and to promote a policy of punishment without knowing conduct that creates the status that the legislature defines as an element of a violation of criminal law. In this case, the truthfulness of defendant's claims about how he came to be in the forbidden status is unknown because the trial court shut its ears to the defense. The mere label "strict liability crime" should not prevent a meaningful role for the jury in assessing criminal responsibility.

Rather than analyzing the defense offered under the facts of this case to decide whether the legislature "clearly indicates" an intention to prevent the jury or other trier of fact from hearing *this* defense, the majority sets up and knocks down the straw men of other defenses based on quite different facts. For example, the majority sets up and knocks down the defenses "I was so drunk I didn't know what I was doing" and "dangerously intoxicated drivers often insist, at times sincerely, that the liquor they drank did not affect their driving ability." Neither straw-man case is this case. I strongly agree with the majority that "one who drives after drinking intoxicating liquor takes the risk that his BAC [blood-alcohol content] violates the statute." But what "risk" did Mr. Miller understandingly take?

The majority points out the policy of society is "to get drunken drivers off Oregon highways." Again, I agree. Clearly, the police who apprehended defendant should have done so and should have arrested him and prevented his further driving. But that is not the issue. Rather, the question is whether that policy must mean that a person who asserts that he does not know he had anything at all alcoholic to drink should be prevented from telling that to the jury so it may decide whether he is truthful and, therefore, not a criminal. Even if one feels that it is not very likely that the jury will believe the

defendant, that credibility question is what jurors and other triers of fact are to decide. Keeping drunken drivers off the road will not be achieved by convicting people who believed they drank coffee only. As the written decision in *State v. Maguire,* 78 Or App 459, 462, 717 P2d 226 (1986), *aff'd without opinion by an equally divided court* 303 Or 368, 736 P2d 193 (1987), points out, in discussing the policy foundation of the DUII statute:

> "The legislature made DUII a crime in order to keep dangerous drivers off the road. It was undoubtedly aware of what experience with DUII cases shows: dangerously intoxicated drivers often insist, at times sincerely, that the liquor which they drank has not affected their driving ability." 78 Or App at 462.

The majority also cite *State v. Bunch,* 87 Or App 386, 742 P2d 74 (1987), a ten-line per curiam opinion citing *Maguire, supra. Maguire* is about a defendant who knew she was drinking alcohol and doing so to excess as a "compulsive" drinker, not about a person who drank what he believed to be a cup of coffee, handed to him by a friend, as defendant here asserts.

Without doubt, the legislature intended that voluntary intoxication not be a defense to DUII. Becoming so drunk you don't know what you are doing is certainly criminal under DUII if you drive. Moreover, that statutory defense is limited to specific intent offenses and does not apply generally as do the provisions of ORS 161.105, and it may well be that the legislature intended to exclude the specific defense that one is a compulsive drinker and couldn't help himself, which is the extent of the holding on the facts of *Maguire, supra.* After all, one is not compelled to drive just because one is an uncontrollable alcoholic. A "risk" has been consciously or knowingly taken. But to move from those cases to this one is quite a jump. To hold that the legislature intended to make criminal the act of drinking a cup of coffee handed to you by a friend (or a truck-stop waiter) is, to borrow the majority's word, "preposterous."

A conviction here will not further the purpose of the statute to keep drinking drivers off the road. It will, instead, give a criminal record to a presumptively innocent 18-year-old who, according to his explanation, made no understanding

choice which he could foresee would, even potentially, create a risk of going down life's road as a convict. Further, a conviction here will permit this court, or the legislature, to deny jurors chosen from the community a meaningful role in the courtroom and deprive the defendant the right of trial by jury.

Nor is it likely that closing a jury's eyes and ears to a defendant's defense in a criminal case would pass federal constitutional muster. Making criminal the everyday conduct of drinking a cup of coffee and thereafter driving, without providing an opportunity to defendant to present claims to a jury for their assessment and determination, is far different from excluding testimony on the basis of state evidence rules about reliability or relevance.

The court would be expected to seek a construction of statutes which would avoid or minimize potential constitutional complications in a statutory interpretation case presented for decision. The court chose not to do so here, perhaps relying on the Oregon Constitution's lack of an explicit "due process" clause.

Because I think the defense must be submitted to and decided by a jury, I would reverse and remand for trial.