Argued and submitted November 30, 1993, affirmed April 20, both Van Norsdall's petitions for review denied September 20, 1994 (320 Or 131)

# STATE OF OREGON,
## *Respondent,*

*v.*

# ROBERT TERRY VAN NORSDALL,
## *Appellant.*

## (90-CR-0193-15; CA A70546)

873 P2d 345

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Sally L.

Avera, Public Defender. Appellant filed a supplemental brief *pro se*.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

Leeson, J., concurring in part; dissenting in part.

## ROSSMAN, P. J.

Defendant appeals his convictions, after a jury trial, of assault in the first degree with a firearm, ORS 163.185; 161.610; and three counts of felon in possession of a firearm, ORS 166.270. The facts, which are essentially undisputed, are stated in the light most favorable to the state. *State v. Langley*, 314 Or 247, 249, 839 P2d 692 (1992).

Defendant lived with Marcey Kimler and her children. On the evening of November 17, 1990, defendant had been drinking when the victim, Capehart, came to visit Kimler's children. Capehart had been drinking as well, and he and defendant drank together for a while. Later that evening, defendant argued with Kimler about something. He pushed her down the steps leading to the porch of her house. Capehart intervened, calling out to defendant from across the yard, "Quit pushing Marcey. If you have to be beating up on someone, then beat me up." Defendant approached Capehart, making Karate motions. Capehart removed his coat and kicked defendant on the left temple, causing them both to fall. As they got up, Capehart told defendant:

> "[T]his was B.S. This is between friends and I'm going home. If you want to talk—talk about it, you call me on the phone tomorrow. We'll talk about it."

Capehart went to his car, started it, and allowed it to warm up a few minutes. When he turned on his headlights, he saw defendant standing in front of the car. Defendant had fired a shot at Capehart from a small .22 caliber handgun, but Capehart was unaware of that. Capehart opened the door, thinking that defendant wanted to talk. He got out, stood between the door and the chassis and asked, "What do you want, Robert?" Defendant said, "Do you want to mess with me? Do you want to mess with me?" Defendant then fired the gun again, and a bullet hit Capehart in the throat, knocking him back several feet onto the ground. By this time, Kimler had called 911 to report the fight, had loaded her children into her car, and was about to drive off. When she saw Capehart lying on the ground, she offered to take him to the hospital. He refused, not wanting to upset the children. As he stood up to get into his own car, Capehart told defendant that he wouldn't mention defendant's name. He drove himself to the hospital.

■ After being charged and before trial, defendant subpoenaed documents from the county's Crime Victims' Assistance office showing that the Victims' Assistance Fund had paid $5,600 toward Capehart's medical bills, which were over $28,000. In order to be eligible for the funds, Capehart had to have been a "victim" and had to have agreed to cooperate with the state in the apprehension and prosecution of defendant. ORS 147.015. The state moved to quash the subpoena, on the ground that the evidence was irrelevant and that it would be contrary to public policy to permit its use at trial. The state concedes that the trial court's ruling quashing the subpoena effectively precluded any evidence concerning Capehart's receipt of funds from the Crime Victims' Assistance Fund, and that it would have been futile for defendant to have made an offer of proof. *See State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990). We accept the concession.

Defendant contends that the excluded evidence was relevant pursuant to OEC 609 to show that Capehart was biased or had an interest in the outcome of the case. We agree with defendant's proposition that evidence of bias or interest is generally admissible. *State v. Hubbard*, 297 Or 789, 688 P2d 1311 (1984); Kirkpatrick, *Oregon Evidence* 377 (2d ed 1989). Assuming, however, that the evidence in dispute could have shown Capehart's bias or interest, if any, we conclude that its exclusion was harmless. Ordinarily, a reasonable juror might assume that the victim of a shooting would be biased against the defendant. There is no dispute that defendant shot Capehart or that the circumstances were as Capehart described them. Indeed, defendant's attorney urged the jury to believe *Capehart's* account of the incident. The only disputes concerned whether defendant intended to shoot Capehart and whether defendant believed that he was acting in self-defense. In this case, the answers to those questions are in the mind of the actor and can only be inferred from the undisputed evidence of what transpired. Defendant's memory of the evening is sparse. He testified that he remembers Capehart hitting him on the side of the head. He also remembers seeing Capehart's car and thinking that Capehart was coming at him. However, he has no memory whatsoever of having shot Capehart. Capehart himself testified that he did not think that defendant intended to shoot him. If anything, it appears that Capehart was biased *in favor* of defendant. In

the light of this record, there is little likelihood that the exclusion of the evidence affected the verdict. *State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987). Accordingly, any error was harmless.

■     Additionally, defendant asserts that the trial court erred in refusing to instruct the jury that, in order to convict him of being a felon in possession of a firearm, the jury had to find that defendant knew he was a felon at the time he possessed the firearm. Defendant contends that the court further erred when it instructed the jury that it did *not* need to find that defendant knew he was a felon in order to convict him.

ORS 161.095(2) provides, in part, that

"a person is guilty of an offense when the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 166.270, which prohibits the possession of firearms by those convicted of a felony, does not prescribe a *mens rea* that the state must prove with respect to any of the elements of the crime. ORS 161.115(2) provides, in part:

"[I]f a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only *if the person acts* intentionally, knowingly, recklessly or with criminal negligence." (Emphasis supplied.)

ORS 161.025(1)(d) explains that the purpose of the criminal code is to

"define the *act or omission* and the accompanying mental state that constitute each offense * * *." (Emphasis supplied.)

An "act" is a "bodily movement." ORS 161.085(1). The "act" prohibited by ORS 166.270 is the possession of firearms. The actor's status of being a felon, although an element of the crime, is not an act; it is simply part of the attending circumstances. There is no mental state, *i.e., mens rea,* applicable to it.

In *State v. Blanton*, 284 Or 591, 588 P2d 28 (1978), the Supreme Court divided the elements of an offense into

two categories: (1) those that relate to or define "the substance or quality of the forbidden act," which necessarily require a culpable mental state, and (2) those that relate to conditions that exist outside the actor's state of mind, such as "venue, jurisdiction, statutes of limitation and the like," for which no culpable mental state is required. 284 Or at 595. The status of being a felon is within this latter category. As the court said in *State v. Miller*, 309 Or 362, 369, 788 P2d 974 (1990), the existence of a status that is an element of the crime (in that case, being under the influence of intoxicants,) has nothing to do with the person's mental state. We conclude that the status of being a felon is not an element that is logically provable by a *mens rea*, and that, therefore, it is not an element to which a culpable mental state applies under ORS 161.115(2).

There should be no concern here that defendant has been convicted on the basis of strict liability. The state has acknowledged the appropriate culpable mental state by charging defendant with "knowingly" possessing a firearm. Defendant admits that he knowingly possessed a gun. The element of possession is the only material element of the charge that lends itself to the application of a *mens rea* requirement.

Just as a conviction for theft in the third degree would not be reversed on the basis of a defendant's unchallenged testimony that he did not know that the value of the property exceeded $50, *see* ORS 164.043(b), because the value of the property is independent of the question of whether the defendant is or should be personally responsible for his acts, here, being a felon is separate from the acts that constitute the crime of possessing a firearm, and is not subject to a culpable mental state. In other words, a felon will not be acquitted of the crime of being a felon in possession of a firearm simply because he claims to have forgotten his prior felony conviction or professes not to understand what a "felon" is. That is the necessary and logical consequence of the dissent's opinion, and we reject it. Defendant's ignorance of his own status is no excuse.[1]

---

[1] In *State v. Hash*, 34 Or App 281, 578 P2d 482 (1978), former Chief Judge Joseph used some rather broad language to describe the proof required for felon in possession of a firearm:

We have considered and reject without discussion defendant's supplemental assignment of error.

Affirmed.

**LEESON, J.,** concurring in part; dissenting in part.

The majority holds that a felon who possesses a firearm under an honest and reasonable belief that he or she is not a felon, nonetheless is guilty of felon in possession of a firearm, ORS 166.270, a felony offense punishable by up to five years in prison. Because I believe that the applicable statutes require the state to prove a culpable mental state with respect to that element, I dissent from the majority's holding on that issue. I join the majority opinion only with regard to affirming the assault conviction.

Defendant possessed a firearm, after having been convicted five times of driving while suspended. ORS 811.175. Driving while suspended is either a felony, a misdemeanor or an infraction, depending on various circumstances, including the prosecutor's discretion. Three of defendant's driving while suspended convictions were felonies. The state presented evidence from which a trier of fact could find that defendant knew those convictions were felonies. Defendant presented evidence from which a trier of fact could find that, at the time of the alleged crime, he was operating under the mistaken belief that his convictions were misdemeanors.

The trial court instructed the jury that

"whether defendant knew he was convicted of driving while suspended as a felony is not an element of the crime of ex-felon in possession of a firearm."

"Because the offense with which defendant is charged does not come within the exception set forth in ORS 161.105, a culpable mental state is required as to each material element. ORS 161.095." 34 Or App 284. (Footnotes omitted.)

Although the language is broad, its impact is severely narrowed when considered in the context of the case, which involved the question of whether it had to be shown that the defendant knew that the firearm he possessed was capable of being fired. We held not, concluding that the only element to which a culpable mental state was applicable was the defendant's possession of the firearm. We adhere to that holding, and to the extent that *Hash* might be understood to require a culpable mental state as to the element of being a felon in possession of a firearm, it is disapproved.

Defendant excepted to that instruction, and assigns it as error.

A person commits the crime of felon in possession of a firearm if the person (1) has been convicted of a felony, and (2) has a firearm in the person's possession, custody or control. ORS 166.270(1). The state must generally prove a culpable mental state with respect to each material element of an offense. ORS 161.095(2) provides, with certain exceptions, that

"a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

The leading case construing that statute is *State v. Blanton*, 284 Or 591, 588 P2d 28 (1978). In *Blanton*, the defendant was charged with furnishing a narcotic drug to a person under 18 years of age. He asserted as a defense that he did not know that the recipient was under 18. The state contended that the supposed mistake about the recipient's age was immaterial, because the recipient's age was not a material element for which it was required to prove a culpable mental state. The Supreme Court held that there was "no question that the age of the recipient is a material element of the offense." 284 Or at 595. The court also considered whether the recipient's age was a "material element that necessarily requires a culpable mental state," within the meaning of ORS 161.095(2). It held that that phrase was intended

"to distinguish those elements defining the substance or quality of the forbidden conduct from others relating * * * 'solely to the statutes of limitations, jurisdiction, venue and the like.' " 284 Or at 595.

Following *Blanton*, a culpable mental state is required for a material element that defines the substance of quality of the forbidden conduct, and not for those elements that might be termed procedural prerequisites to criminal liability. *See also State v. Jaha*, 118 Or App 497, 848 P2d 622 (1993).

Defendant's status as a felon is a "material element" of the crime. Furthermore, it is an element that defines the

substance or quality of the forbidden conduct. Were it not for defendant's status as a felon, his possession of a firearm could not violate ORS 166.270. Defendant's status as a felon has nothing to do with "the statute of limitations, jurisdiction, venue and the like." Therefore, under *Blanton*, it is an element for which a culpable mental state is required.[1]

The majority holds, to the contrary, that defendant's status was "simply part of the attending circumstances. There is no mental state, *i.e., mens rea* applicable to it." 127 Or App at 304. Frequently, a culpable mental state is required with respect to attending circumstances. In *Blanton* itself, the court held that the defendant was not guilty of furnishing a narcotic drug to a person under 18 years of age, unless he knew the recipient was under 18. In other words, the culpable mental state requirement applied to the attending circumstance of the recipient's age.

It is not a significant difference that the attending circumstance at issue in this case is the defendant's status. In *In re Kirkman*, 313 Or 181, 830 P2d 206 (1992), which was a lawyer disciplinary proceeding, the accused was alleged to have committed bigamy. ORS 163.515. That statute provides that a person commits bigamy "if the person knowingly marries or purports to marry another person at a time when either *is* lawfully married." (Emphasis supplied.) The

---

[1] The majority's reliance on *State v. Miller*, 309 Or 362, 269, 788 P2d 974 (1990), is unpersuasive. In that case, the Supreme Court held that the defendant's blood alcohol content was not an element of driving under the influence of intoxicants statute, ORS 813.010, for which a culpable mental state was required. It based that holding on ORS 161.105(1)(b), which provides that a culpable mental state is not required if:

"An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof."

The court held that ORS 813.010 was a statute outside the Oregon Criminal Code, and that the statute clearly indicated an intent to dispense with any culpable mental state requirement with respect to a defendant's blood alcohol content. Therefore, no culpable mental state was required for that element.

The felon in possession of a firearm statute, ORS 166.270, is not expressly enumerated as a statute within the Code. *See* ORS 161.005. However, the Supreme Court has expressed doubt as to whether the failure to include it within the Code was a mere oversight. *State v. Wolfe*, 288 Or 521, 525 n 3, 605 P2d 1185 (1980). In any event, the exception only applies if there is a clear indication of a legislative intent to dispense with any culpable mental state requirement. There is no such indication, clear or otherwise, with respect to ORS 166.270. Therefore, *Miller* is inapposite to this case.

Supreme Court held that the accused committed bigamy "when he knowingly married or purported to marry [one woman] * * *, when he *knew that he was* still married to [another]." 313 Or at 185. (Emphasis supplied.) The attendant circumstance of the accused's legal status as a married person was an element of bigamy for which a culpable mental state was required. If he did not know that he was a married person when he purported to marry again, then he was not guilty of the crime.

The felon in possession of a firearm statute, like the bigamy statute, makes the criminality of the act dependent on the legal status of the actor at the time of the act. As in *Kirkman*, a culpable mental state should be required as to that status.

Nonetheless, the majority contends that defendant's status as a felon is not an element that is "logically provable by a *mens rea.*" 127 Or App at 305. That is not so. Culpability as to one's status as a felon refers to knowing that one has been convicted of a felony, or recklessly or with criminal negligence failing to realize it.

The potential for injustice in the majority's rule is illustrated by the facts of *People v. Bray*, 52 Cal App 3d 494, 124 Cal Rptr 913 (1975). In that case, Bray was convicted in Kansas for being an accessory after the fact. He pleaded guilty to that charge, and was sentenced to probation. After completing his probation, Bray moved to California. When he arrived in California, he filled out a voter's application form, on which he explained the Kansas conviction and expressed his uncertainty about whether that conviction was a felony. He was allowed to vote. On subsequent official application forms, he continued to express confusion about whether his Kansas conviction was a felony.

Thereafter, Bray was charged with felon in possession of a firearm. At trial, the court refused to give his requested instruction that ignorance of his status as a felon would be a defense. On appeal, the court noted that the "prevailing trend of decisions is to avoid constructions of penal statutes that would impose strict liability." It held that

"knowledge that one is a felon becomes relevant where there is doubt the defendant knew he had committed a felony.

Here, even the prosecution has substantial difficulty in determining whether the offense was considered a felony in Kansas. * * * *There was no doubt Bray knew he had committed an offense; there was, however, evidence to the effect he did not know the offense was a felony. Without this knowledge [he] would be ignorant of the facts necessary for him to come within the proscription of [the statute]*. Under these circumstances the requested instruction on mistake or ignorance of fact * * * should have been given." 124 Cal Rptr at 916. (Emphasis supplied.)

*People v. Bray, supra*, was essentially limited to its facts by a closely and sharply divided California Supreme Court in *People v. Snyder*, 32 Cal 3d 602, 186 Cal Rptr 485 (1982). The majority held that the defendant's mistake as to her status as a felon was a mistake of law, and, therefore, was no defense.

Whatever its merits in California, that position is not tenable under Oregon law. In Oregon, the postulate that "ignorance of the law is no excuse" is codified at ORS 161.115(4), which provides:

"Knowledge that conduct constitutes an offense, or knowledge of the existence, meaning, or application of the statute defining an offense, is not an element of an offense unless the statute clearly so provides."

The point of ORS 161.115(4) is that a person is culpable if the person commits the prohibited act with the requisite mental state, regardless of whether the person also knows that the act violates the law. As applied to this case, that provision charges defendant with knowledge that being a felon in possession of a firearm is an offense, and with knowledge of the existence, meaning and application of the statute defining that offense.

Defendant does not claim that he was mistaken as to those matters. He claims that he was mistaken as to the meaning or application of a different statute, specifically, the driving while suspended statute. ORS 811.175. Defendant is not charged, as a matter of law, with knowledge of the meaning or application of that statute in this case. Whether he acted culpably with respect to his status as a felon is a question for the trier of fact.

Finally, the majority says that "the necessary and logical consequence" of my opinion is that a felon should be acquitted "simply because he claims to have forgotten his prior felony conviction or professes not to understand what a 'felon' is." 127 Or App at 305. Whether a particular defendant should be acquitted based on a "claim" that he or she lacked the requisite culpable mental state is a question for the trier of fact. The acquittal of the majority's hypothetical defendant is not, and could not be, "the necessary and logical consequence" of this opinion.

I would hold that the trial court erred by instructing the jury that defendant's knowledge of his status as a felon is not an element of the crime, and would therefore reverse the conviction for felon in possession of a firearm. The assault conviction is not affected by that error. I join the majority's resolution of the evidentiary assignment of error, and would affirm defendant's conviction for assault.