Argued and submitted November 16, 2010, reversed and remanded May 25, 2011

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RITA JEAN BATY,
*Defendant-Appellant.*

Beaverton Municipal Court
UC7318211; A142350

259 P3d 98

Erin Galli argued the cause for appellant. With her on the briefs was John Henry Hingson III.

Erika L. Hadlock, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals from a conviction in municipal court for driving under the influence of intoxicants (DUII), ORS 813.010. She first assigns error to the trial court's denial of her motion for a judgment of acquittal. That motion was based on the argument that, if she drove at all, it was only within the confines of a parking space reserved for persons with disabilities; an element of DUII is driving on "premises open to the public"; and a disabled-only parking space is not "open to the public." She also assigns error to the court's refusal to instruct the jury on the elements of "attempted driving under the influence of intoxicants." The state responds that a disabled-only parking space is open to the public for purposes of DUII, that attempted DUII is not a crime, and that, even if it is, there was no evidence to support an instruction on it in this case. We agree with the state that the disabled-only space was open to the public, but we agree with defendant that the court erred in not giving the attempted DUII instruction. We therefore reverse and remand.

The only disputed facts in this case involve whether the evidence supported an "attempted DUII" instruction; we therefore review the facts in the light most favorable to defendant, who requested the instruction.[1] *State v. Taylor*, 207 Or App 649, 666, 142 P3d 1093 (2006), *rev den*, 342 Or 299 (2007). At around 3:00 p.m., Beaverton Community Service Officer McNeel was patrolling a local Fred Meyer parking lot for illegal use of disabled-only parking spaces. ORS 811.615. McNeel saw a red Ford Taurus parked in one such space. The car was unoccupied and had an Oregon disability parking permit hanging from the rear-view mirror. McNeel verified that the permit was current and learned that it belonged to a woman born in 1926. As he was acquiring that information, he saw a white Acura without a disability permit pull into the disabled-only space next to the Taurus. The driver of the Acura got out and went to a nearby ATM machine. At that point, McNeel approached the cars and

---

[1] The question of whether "attempted DUII" is a crime is purely legal, and the only relevant fact regarding the handicap parking space—that the events at issue here occurred in such a space—is undisputed.

parked his patrol car behind the Acura, completely blocking it and partially blocking the Taurus. He then first saw defendant, who was now standing in front of the Taurus. According to McNeel, defendant did not look old enough to have been born in 1926, and the officer became suspicious that she was unlawfully using some other person's disability parking permit.

After citing the driver of the Acura, McNeel approached defendant, who was by then behind the wheel of the Taurus. Based on her appearance, he developed the suspicion that she was under the influence of intoxicants. He called for back up, and police officers Bowen and Buelt arrived on the scene shortly thereafter. Neither of the officers saw defendant operate the car. Bowen approached defendant and could smell alcohol on her. He administered field sobriety tests, which she failed. Bowen then arrested her and took her to a nearby police station, where a breath test showed a blood alcohol content of .17 percent, .09 above the legal limit.

At trial, the question before the jury was whether defendant actually drove her car while intoxicated. McNeel testified that he saw defendant drive "[p]robably several feet" in reverse, but never saw her drive the car forward. Yet he had written in his report, and also testified, that defendant "attempt[ed] to back up," and he wrote that she was "trying to back up," and when shown photos of the scene, McNeel could not explain why defendant's car was pulled all the way forward in the parking spot when he had seen her back up the car and not pull it forward. During cross-examination, McNeel acknowledged that the phrase "attempting to back up" could refer to a situation in which a person merely prepared to drive in reverse, but where the vehicle did not actually move. Additionally, McNeel testified that he had been trained that his reports should be factual, specific, and contain all relevant information—and he acknowledged that he did not explicitly describe in his report that defendant's vehicle had moved. McNeel also acknowledged that, according to his training, police officers may lose up to 75 percent of their memory of an incident after 48 hours. Defendant did not testify. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal, arguing that defendant could not be found guilty of a DUII because a disabled-only parking

space is not a "premise[ ] opened to the public" as a matter of law. The court disagreed and denied defendant's motion.

Defendant then requested that the jury be instructed on the lesser-included offense of attempted DUII. Specifically, defendant argued that the jury

"could conclude that she had, in fact, not moved [the vehicle]. As [McNeel] had, in fact, said on cross-examination, that if a person started their car, put it in gear, put their seatbelt on, put the car into reverse, had their foot on the brake, looked over their shoulder, that that could mean that a person was trying to back up.

"And * * * there is, certainly, evidence on the other side, but the jury could conclude that that is what his meaning was, that that car had not moved. That's a credibility question for this jury, not for the court. And if they conclude that, in fact, she had not moved, she certainly had taken substantial steps toward the commission of this offense. So that gives rise to the attempted driving under the influence instruction."

The state made two arguments in response. First, the state argued that DUII is "an all or nothing kind of proposition" and "you either drive the car or you don't," that is, that there is no such crime as attempted DUII. Alternatively, the state argued that the evidence did not support defendant's requested instruction. The court denied defendant's request, concluding that "there is not evidence of an attempt to drive the vehicle. The evidence given by Officer McNeel was that he saw the defendant back the vehicle within the handicap parking space, move it several feet. So ruled." After a trial to a jury, defendant was convicted of DUII. This appeal followed.

We begin with the denial of defendant's motion for a judgment of acquittal. ORS 813.010(4) provides, in part, that DUII "is a Class A misdemeanor and is applicable upon any *premises open to the public*." (Emphasis added.) ORS 801.400 defines "premises open to the public" as

"any premises open to the general public for the use of motor vehicles, whether the premises are publicly or privately owned and whether or not a fee is charged for the use of the premises."

On appeal, defendant argues that the trial court should have granted her motion for a judgment of acquittal because there was insufficient evidence that the disabled-only parking space on which the alleged violation occurred was a "premise[ ] open to the general public for the use of motor vehicles." We disagree.

Both McNeel and Buelt testified without contradiction that the parking lot where the arrest occurred was open to the public, and it is undisputed that it was "for the use of motor vehicles." The fact that some portion of this open space was reserved for a subset of motor vehicles—those driven by disabled persons and showing a valid disability permit—does not render those spaces *un*open to the general public any more than a highway is *un*open to the general public because it is reserved for a subset of motor vehicles—those operated by validly licensed drivers. Even more fundamentally, a disabled-only parking space is, in fact, open to the general public for the use of motor vehicles in that a nondisabled member of the general public can *drive through* such a space, *see* ORS 811.615(1) (prohibiting *parking* in spaces reserved for persons with disabilities), or momentarily stop in such a space to pick up or drop off a disabled person, ORS 811.615(2)(a). The fact that such a nondisabled member of the general public can drive through such a space but cannot *park* there does not render the space closed, any more than a highway is rendered closed by a rule that members of the general public can drive on it but cannot park there. The trial court did not err in denying defendant's motion for a judgment of acquittal.

In two assignments of error, defendant contests the court's denial of her request for a jury instruction on attempted DUII. One assignment focuses on the court's refusal to give a general instruction on attempt: "A person attempts to commit a crime when she intentionally engages in conduct that constitutes a substantial step toward the commission of that crime." The other assignment focuses on the court's refusal to give a special instruction on attempted DUII, which stated, among other things, that the crime of DUII "has as a lesser-included offense the crime of attempted driving under the influence of intoxicants" and that one element of that crime was that defendant "attempted to drive a

vehicle on premises open to the public" while under the influence of alcohol.

The parties agree that a criminal defendant is entitled to an instruction based on her theory of the case if the instruction correctly states the law and there is evidence to support the theory. *State v. Barnes*, 329 Or 327, 334, 986 P2d 1160 (1999). They also agree that the instruction on attempt correctly restates ORS 161.405(1): "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." And they agree that, generally speaking, the attempt to commit a crime is a lesser-included offense of the crime itself. *State v. Anderson*, 241 Or 18, 21, 403 P2d 778 (1965). The parties diverge in their analysis of the relationship between ORS 136.465 and ORS 801.020(7). The former provides,

> "*In all cases,* the defendant may be found guilty of *any crime* the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument or of an attempt to commit such crime."

(Emphases added.) Defendant insists that the emphasized language is categorical and plain: all cases means all cases, and any crime means any crime. The state, acknowledging that it has, in the past, agreed with (and argued for) defendant's reading of ORS 136.465, explains that it has recently discovered ORS 801.020(7), a later and more specific statute:

> "The vehicle code shall govern the construction of and punishment for any vehicle code offense committed after June 27, 1975, the construction and application of any defense to a prosecution for such an offense and any administrative proceedings authorized or affected by the vehicle code."

According to the state, this statute

> "states that the vehicle code governs the construction of DUII and of defenses to that crime. Consequently, ORS 801.020(7) appears to say that whether 'attempted DUII' is an offense at all must be determined by reference to the vehicle code. And the vehicle code does not contain a counterpart to ORS 136.465, the source of defendant's argument—and of the state's position in [*State v.*] *Sexton,*

[145 Or App 261, 928 P2d 365 (1996), *rev den*, 324 Or 560 (1997)], on which defendant relies. That is, the vehicle code does not contain any specific provision defining attempted DUII as an offense or any general provision stating that a person charged with a vehicle code offense may be convicted of a lesser-included offense or an attempt."

We are not persuaded by the state's argument. With respect to criminal cases like this one, ORS 801.020(7) applies to (1) "construction of" a vehicle code offense, (2) "punishment for" a vehicle code offense, (3) "construction of" a defense to a vehicle code offense, and (4) "application of" a defense to a vehicle code offense. Of those four options, only the first has any relevance here: to declare that attempted DUII exists has nothing to do with punishment for DUII, construction of a defense to DUII, or application of a defense to DUII. Thus, the state's argument, to have any coherence, must be that finding the existence of attempted DUII is a "construction of" DUII. "Construction" could mean the act of construing, that is, interpreting; or it could mean the act of construction, that is, of building or creating. To say that there is such a crime as attempted DUII cannot be seen as an *interpretation* of the DUII statute. The state's position, then—as confirmed at oral argument—is that finding the crime of attempted DUII amounts to *creating* a vehicle code offense, and doing so by invoking a statute (ORS 136.465) that is outside of the vehicle code, and that doing so therefore is contrary to ORS 801.020(7). That position, we repeat, depends on the theory that "construction of" an offense means "creation" of an offense, and we are unable to find any other instance of the legislature using the term "construction" in that way. Further, it depends on the theory that newly constructed offenses will somehow identify themselves as "vehicle code offenses," presumably meaning offenses that legislative counsel chooses to codify within ORS chapters 801 through 826 (the Oregon Vehicle Code as defined by ORS 801.010), as opposed to the more likely meaning: an offense that is contained within the vehicle code as of June 27, 1975. Neither of those theories is tenable.

That conclusion raises the following question: What, exactly, *does* ORS 801.020(7) mean? What limits does it

impose on the interpretation of, punishment for, or application of vehicle code offenses? The answer, as indicated by the legislative history, appears to be that the statute is incoherent as a limitation on construction, punishment, or application of vehicle code offenses because it was not drafted for that purpose. It was drafted to state clearly when the new vehicle code was to take effect.

ORS 801.020(7) began as section 5(1) of a revision of the vehicle code drafted under the auspices of the Committee on the Judiciary and enacted in 1975. *See* Proposed Revision, Oregon Vehicle Code, Committee on Judiciary, § 5(1) (Jan 1975). The minutes of the committee discussion of section 5(1) were captioned, "Application of New Vehicle Code Provisions to Prior and Subsequent Actions." *Id.* In the committee's proposed report to the full legislature, section 5 read:

> **"Section 5.  (Application of new vehicle code provisions to prior and subsequent actions.)** (1)  Sections 2 to 169 of this 1975 Act shall govern the construction of and punishment for any vehicle code offense defined in this 1975 Act and committed after the effective date of this 1975 Act, the construction and application of any defense to a prosecution for such an offense and any administrative proceedings authorized or affected by this 1975 Act.

> "(2)    Sections 2 to 169 of this 1975 Act shall not apply to or govern the construction of or punishment for any vehicle code offense committed before the effective date of this 1975 Act or the construction and application of any defense to a prosecution for such an offense."

Proposed Revision, Oregon Vehicle Code, Committee on Judiciary, § 5 (Jan 1975) (boldface in original). The "Commentary" to that section states:

> "This section sets forth the rules under which the revised vehicle code will be applied to particular actions and proceedings *in order to provide for an orderly transition from the old to the new statutes.* The section covers the application of substantive as well as procedural provisions."

*Id.* at 6 (emphasis added). Although not unambiguous, this language at least indicates that the purpose of the section was to establish when the substantive and procedural provisions of the new vehicle code were to take effect.

Finally, we note that, if ORS 801.020(7) means what the state says it means—that no vehicle code offense *or defense* can be "constructed" by application of a statute that lies outside of the vehicle code—then the defendant in a DUII case could not invoke the statute of limitations, ORS 131.105 to 131.125; the speedy trial provisions, ORS 135.747; or the "guilty except for insanity" defense, ORS 161.295. We presume that the legislature would not have intended such an absurd result. *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996). In sum, we conclude that ORS 801.020(7) does not prohibit application of the general attempt statute to the offense of DUII.

The state argues that, even if there is such an offense as attempted DUII, the court did not err in refusing to give defendant's instruction to that effect because there was no evidence to support the theory that she had, while intoxicated, merely attempted to drive. There was evidence that she drove and evidence that she did not drive, but there was no evidence that she only attempted to drive.

Again, we disagree. We recognize that defendant is not entitled to a lesser-included offense instruction merely because she can "sift[ ] the state's evidence for facts sufficient to support any inference running contrary to the prosecution's case." *State v. Washington*, 273 Or 829, 841, 543 P2d 1058 (1975). We also recognize that the line between permissible inferences from facts and impermissible speculation is a fine line indeed. Here, defendant presented evidence that McNeel wrote in his report that defendant was "trying" to back up. Although he testified at trial that he saw defendant actually drive the car in reverse, McNeel also testified that, hypothetically, a person could try to move a car in reverse by getting behind the wheel, starting the car, putting on the seatbelt, putting the car in gear, and looking over her right shoulder—but not actually moving. Defendant also attempted to discredit McNeel's memory by confronting him with a photograph of defendant's car at the front of the parking space despite the fact that McNeel had testified that he observed her drive the car away from the front and did not observe her driving it back to the front. From that evidence, viewed in the light most favorable to defendant, a juror could

infer that McNeel actually saw defendant take steps preparatory to driving, but did not see her drive. *See State v. Bilsborrow*, 230 Or App 413, 419, 215 P3d 914 (2009) ("[I]t is well settled that, to be guilty of DUII, a person must 'drive' while intoxicated, ORS 813.010(1), and 'driving' requires putting a vehicle in motion * * *."). For that reason, the court erred in not giving the proffered instruction on attempted DUII.

Reversed and remanded.