Argued and submitted January 8, decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings May 31, 2013

STATE OF OREGON,
*Respondent on Review,*

*v.*

JAMES ROBERT NEWMAN,
*Petitioner on Review.*

(CC 0805-32364; CA A142837; SC S060182)

302 P3d 435

Jesse Wm. Barton, Salem, argued the cause and filed the briefs for petitioner on review.

Rolf Moan, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

J. Kevin Hunt, Oregon City, filed the brief for *amicus curiae* the Sleep Disordered.

Before Balmer, Chief Justice, and Kistler, Walters, Linder, Landau, and Baldwin, Justices.**

BALDWIN, J.

---

** Brewer, J., did not participate in the consideration or decision of this case.

**BALDWIN, J.**

Defendant was convicted of felony driving under the influence of intoxicants (DUII), ORS 813.010. At trial, defendant sought to introduce evidence that he suffers from a sleepwalking disorder and was "sleep driving" at the time he was stopped in his vehicle.[1] Defendant argued he did not voluntarily drive his vehicle, an element of proof necessary to establish criminal liability for DUII. The trial court excluded defendant's proffered evidence, concluding it was not relevant because DUII is a strict-liability offense. On appeal, the Court of Appeals agreed that DUII is a strict-liability offense and affirmed. *State v. Newman,* 246 Or App 334, 265 P3d 86 (2011). We allowed defendant's petition for review. For the reasons that follow, we conclude defendant's proffered evidence was relevant to the driving element of the DUII charge. Accordingly, we reverse.

## I.  BACKGROUND

We take the following facts from the Court of Appeals opinion.

> "Defendant met his friends for dinner one evening and, anticipating that he would drink alcohol at dinner, left his car parked by his apartment and walked to the restaurant. Thereafter, defendant's friends drove him home, and he went to sleep. Later that evening, a police officer followed defendant's car and observed defendant make a left-hand turn without signaling or stopping, run a red light, and drive down the middle of a street, straddling the two traffic lanes. The officer then activated his overhead lights to initiate a traffic stop and, in response, defendant pulled into a parking lot. The officer approached defendant's car, smelled a strong odor of alcohol, and observed defendant's bloodshot, watery eyes and slow, slurred speech. Defendant agreed to perform field sobriety tests and, after failing them, was taken into custody. At the police station, defendant consented to a Breathalyzer test, which revealed that he had a blood alcohol level of 0.15 percent."

*Id.* at 336.

---

[1] We place in quotes defendant's use of the term "sleep driving" because the term is not in common usage. "Sleepwalking disorder" is recognized at section 307.46 of the American Psychiatric Association *Diagnostic and Statistical Manual of Mental Disorders* (4th ed text rev 2000) (DSM–IV–TR).

Defendant was charged with felony DUII, reckless driving, and recklessly endangering another person. Before trial, the state filed a motion seeking to exclude as irrelevant testimony regarding defendant's sleepwalking disorder and his "sleep driving on the night in question." Defendant argued that evidence of his sleepwalking was relevant to negate the requirements for criminal liability under ORS 161.095—specifically, proof of a voluntary act with respect to the driving element of DUII. Defendant contended that he was not capable of performing the necessary volitional movements to consciously control his vehicle because he was asleep when the police stopped his vehicle.

As part of his offer of proof, defendant testified that he had sleepwalked within his apartment on a number of occasions in the past, but, to his knowledge, had not left his apartment while sleepwalking before this incident. A friend also provided testimony confirming defendant's sleepwalking behaviors. Defendant further testified that, after he went to sleep that evening, he had no recollection of leaving his apartment, getting behind the wheel of his car, or driving. Also, as part of defendant's offer of proof, Dr. Joshua Ramseyer, a physician certified in neurology and sleep medicine, provided expert testimony about the symptoms associated with parasomnia—a category of unwanted behavior that emerges during sleep. Within that category of sleep phenomenon, Dr. Ramseyer explained, exists somnambulism—which is also known as sleepwalking disorder. As Dr. Ramseyer explained:

> "Sleep driving is thought of as being sort of a subtype of sleepwalking or an extension of sleepwalking. It's a motor behavior that occurs without consciousness * * * that comes out during sleep.
>
> "* * * * *
>
> "[J]ust as someone's capable of sort of walking around the house, doing goal-directed behavior, such as eating, people can get behind the wheel, start up the car, and drive."

Dr. Ramseyer emphasized that activities performed while sleepwalking, such as "sleep driving," are *unconscious* acts. He further noted that sleepwalking resulting in "sleep

driving," while uncommon in the general population, is a well-established phenomenon. If permitted to testify, Dr. Ramseyer would have rendered an expert opinion that defendant was "sleep driving" when stopped by police.

In seeking to exclude defendant's proffered evidence, the state argued that the evidence was irrelevant because the state was required to prove only that defendant drove a vehicle with a blood alcohol content of .08 percent or greater or was otherwise under the influence of an intoxicant. The trial court agreed with the state. It concluded that DUII is a strict-liability offense under *State v. Miller*, 309 Or 362, 788 P2d 974 (1990), and excluded defendant's proffered "sleep driving" evidence as irrelevant.[2] The state then dismissed the charges of reckless driving and reckless endangerment and proceeded solely on the charge of felony DUII. Defendant waived his right to a jury and was convicted of the charge.

On appeal, defendant and the state generally reprised the arguments made before the trial court. Defendant argued, in particular, that the only question decided in *Miller* was whether proof of a culpable mental state was required for the intoxication element of DUII. Defendant further asserted that proof of volition is required to find a person criminally liable for DUII.

The Court of Appeals affirmed the trial court's decision, concluding that this court had analyzed the legislative history relating to all elements of the DUII offense in *Miller*, not only the intoxication element. The Court of Appeals isolated a passage from *Miller* in which this court identified "'a legislative intent to dispense with any culpable mental state requirement for the offense [of DUII] or for any of its material elements' as part of a concerted 'legislative effort to improve public safety by getting tougher on DUII offenders.'" *Newman*, 246 Or App at 339 (quoting *Miller*, 309 Or at 368-69). Applying that expansive language to this case, the Court of Appeals concluded that DUII is a strict-liability offense.

---

[2] In *Miller*, we held that "being under the influence of an intoxicant is a strict liability element" of DUII, and, as such, requires no proof of a culpable mental state as to that element. 309 Or at 364. As we explain later in this opinion, *Miller* did not address whether the *driving* element of DUII requires a voluntary act as provided for in ORS 161.095(1).

In this court, defendant again asserts that, for the purposes of DUII prosecutions, ORS 161.095(1) requires proof that a person committed the voluntary act of driving for criminal liability to attach. In defendant's view, evidence of his sleepwalking disorder and his condition on the night in question is relevant to the issue of whether his driving was voluntary, and thus should have been admitted. We allowed review to examine whether the trial court committed legal error in excluding defendant's "sleep driving" evidence. *See State v. Davis*, 351 Or 35, 48, 261 P3d 1197 (2011) (review of trial court's decision to exclude evidence on relevance grounds is for errors of law). To resolve that issue, we must examine the text and context of the pertinent statutes and any legislative history that may disclose the legislative intent in enacting the provisions. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009).

## II. ANALYSIS

The relevant statutory provision defining felony DUII is set forth in the Oregon Vehicle Code as ORS 813.010. At the time that police officers stopped defendant, that statute provided, in pertinent part:

"(1)  A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a)  Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b)  Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or

"(c)  Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance.

"* * * * *

"(4)  Except as provided in subsection (5) of this section, the offense described in this section, driving while under the influence of intoxicants, is a Class A misdemeanor and is applicable upon any premises open to the public.

"(5)(a)  Driving while under the influence of intoxicants is a Class C felony if the current offense was committed in a motor vehicle and the defendant has been convicted, at

least three times in the 10 years prior to the date of the current offense, of any of the following offenses * * *:

"(A) Driving while under the influence of intoxicants * * *[.]"

ORS 813.010 (2007).

ORS 813.010 sets forth two essential elements. A person commits the crime of DUII when the person (1) "drives a vehicle" (2) while "under the influence" of an intoxicating substance. *See State v. King*, 316 Or 437, 446, 852 P2d 190 (1993) (so stating), *overruled in part on other grounds by Farmers Ins. Co. v. Mowry*, 350 Or 686, 697, 261 P3d 1 (2011). As this court recently emphasized, the statute "prohibits *driving* under the influence of intoxicants." *State v. Eumana-Moranchel*, 352 Or 1, 7, 277 P3d 549 (2012) (emphasis in original). Thus, the focus of the DUII statute "is on the act of driving, and doing so while impaired." *Id.*; *see also State v. Clark*, 286 Or 33, 38 593 P2d 123 (1979) ("gravamen" of the predecessor statute to ORS 813.010 is driving with a certain blood alcohol level).

As noted, when he was stopped, defendant admitted that he was intoxicated. He did not admit, however, that he had been consciously driving. He now contends, therefore, that he cannot be found criminally liable for *driving* his vehicle unless the voluntary act requirement of ORS 161.095(1) is met in this case. That statute requires a "voluntary act" as a "minimal requirement" for criminal liability:

"The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing."

ORS 161.095(1). Defendant thus contends that he should have been allowed to show that he was not engaged in a volitional act when driving because he was unconscious. The state responds that ORS 161.095(1) does not apply to DUII, or, alternatively, that ORS 161.095(1) nevertheless does not require that the voluntary act be limited to the driving element of DUII. We first address the state's contention that the volitional act requirement of ORS 161.095(1) does not apply to DUII.

A. *Applicability of ORS 161.095(1) to DUII*

As a threshold issue, the state asserts that the voluntary act requirement of ORS 161.095(1) does not apply to offenses defined in the vehicle code, including the offense of DUII. ORS 161.095 was enacted in 1971 as part of a comprehensive revision of the substantive provisions of the Oregon Criminal Code. *See* Or Laws 1971, ch 743, § 8. As part of that revision, the legislature also enacted ORS 161.035, which makes the Oregon Criminal Code applicable to offenses defined by statutes outside the code:

"(1)  Chapter 743, Oregon Laws 1971, shall govern the construction of and punishment for any offense defined in chapter 743, Oregon Laws 1971, and committed after January 1, 1972, as well as the construction and application of any defense to a prosecution for such an offense.

"(2)  *Except as otherwise expressly provided, or unless the context requires otherwise*, the provisions of chapter 743, Oregon Laws 1971, shall govern the construction of and punishment for any offense defined outside chapter 743, Oregon Laws 1971, and committed after January 1, 1972, as well as the construction and application of any defense to a prosecution for such an offense."

(Emphasis added.)

Based on the text emphasized in the statute above, the state contends that provisions of the criminal code do not automatically apply to offenses—such as the offense of felony DUII—that are defined in the vehicle code. The state specifically points to ORS 801.020(7) as expressing the legislature's intent in that regard. ORS 801.020(7) was enacted in 1975 as part of the newly revised vehicle code. *See* Or Laws 1975, ch 451, § 5. It states:

"The vehicle code shall govern the construction of and punishment for any vehicle code offense committed after June 27, 1975, the construction and application of any defense to a prosecution for such an offense and any administrative proceedings authorized or affected by the vehicle code."

ORS 801.020(7). The state argues that when an offense such as DUII is at issue, the legislature intended that the vehicle code "govern" instead of the criminal code. Accordingly,

the state asserts that the vehicle code provides the exclusive source of law for construing vehicle code offenses and determining what the state must prove to establish such offenses. The state further argues that, if the legislature had intended discrete portions of the criminal code to apply to vehicle code offenses, it would have plainly said so. *See former* ORS 484.350(3), *repealed by* Or Laws 1999, ch 1051, § 32 (enacted by the 1975 legislature to provide that "the criminal and criminal procedure laws of this state relating to a violation as described in ORS 161.505 and 161.565 [of the Oregon Criminal Code] apply with equal force and effect to a traffic infraction"). Defendant responds that the state reads too much into ORS 801.020(7). In defendant's view, the legislature intended that statute to be merely a timing provision to control the effective date of the new code.

The parties' respective constructions of ORS 810.020(7) highlight textual ambiguity in that provision that this court has not previously addressed. However, the relevant legislative history resolves the ambiguity in favor of defendant's position. ORS 801.020(7) was originally drafted by the Committee on the Judiciary as part of a comprehensive revision of the vehicle code. *See* Proposed Revision, Oregon Vehicle Code, Committee on Judiciary, § 5(1) (Jan 1975). In the committee's proposed revision, ORS 801.020(7) was outlined in section 5, which states:

> **"Section 5. (Application of new vehicle code provisions to prior and subsequent actions.)** (1) Sections 2 to 169 of this 1975 Act shall govern the construction of and punishment for any vehicle code offense defined in this 1975 Act and committed after the effective date of this 1975 Act, the construction and application of any defense to a prosecution for such an offense and any administrative proceedings authorized or affected by this 1975 Act.
>
> "(2) Sections 2 to 169 of this 1975 Act shall not apply to or govern the construction of or punishment for any vehicle code offense committed before the effective date of this 1975 Act or the construction and application of any defense to a prosecution for such an offense."

Proposed Revision, Oregon Vehicle Code § 5 (boldface in original). A comment to that section states:

> "This section sets forth the rules under which the revised vehicle code will be applied to particular actions and proceedings in order to provide for an orderly transition from the old to the new statutes. The section covers the application of substantive as well as procedural provisions."

Proposed Revision, Oregon Vehicle Code § 5 Commentary. In the Interim Judiciary Committee's discussion of the provision in 1974, it stressed that the provision was *"meant to be a device to bridge the gap between the revised vehicle code and the existing [code]"* so that cases could be resolved without ambiguity as to whether an old or new statute was operative. Tape Recording, Senate Interim Judiciary Committee, SB 1, Sept 25, 1974, Tape 24, Side A (statement of Project Director Donald L. Paillette) (emphasis added). That legislative history strongly suggests that the purpose of the provision was to state the effective date of the newly revised vehicle code.

That understanding is confirmed by considering ORS 801.020(7) in context with other statutory provisions. Under the state's construction, no criminal code provisions, nor any provisions outside the vehicle code, would apply to vehicle code offenses unless the vehicle code so stated. That would mean that a defendant charged with a vehicle code offense such as DUII could not invoke the time limitations for prosecution under ORS 131.105 to 131.155, assert the speedy trial provision of ORS 135.747, or claim the "guilty except for insanity" defense of ORS 161.295. *See generally State v. Baty*, 243 Or App 77, 86, 259 P3d 98 (2011) (noting that result). However, this court has applied such nonvehicle code provisions in past DUII cases without discussion. *See State v. Adams*, 339 Or 104, 116 P3d 898 (2005) (applying speedy-trial statute in DUII prosecution); *State v. Olmstead*, 310 Or 455, 800 P2d 277 (1990) (applying "guilty except for insanity" defense in DUII prosecution). Thus, we hold that ORS 801.020(7) does not prohibit application of ORS 161.095(1) to the offense of DUII. In addition, we do not view the absence of a voluntary act requirement within the text of ORS 813.010 as expressing a legislative intent to dispense with the requirement.

B. *Voluntary Act—ORS 161.095(1)*

We now turn to the legislative determination that a person perform a voluntary act for imposition of criminal liability. Again, ORS 161.095(1) provides that:

> "The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing."

The legislature has defined a "voluntary act" as used in ORS 161.095(1) to mean "a bodily movement performed consciously and includes the conscious possession or control of property." ORS 161.085(2). Applying that understanding to this case, defendant is not criminally liable under ORS 161.095(1) if he did not perform a bodily movement consciously.

Although the legislature has defined "voluntary act," it has not further defined what constitutes a "conscious" bodily movement. We have recognized that "conscious" as used in ORS 161.085(2) is a word of common usage. *State v. McDonnell*, 313 Or 478, 497, 837 P2d 941 (1992). Accordingly, we turn to the dictionary for further guidance to determine whether defendant's movements, if done while sleepwalking or "sleep driving," would be consciously performed. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (stating that words of common usage should be given their plain, natural, and ordinary meaning). The dictionary definition of "conscious" includes:

> "2 : perceiving, apprehending, or noticing with a degree of controlled thought or observation : recognizing as existent, factual, or true: a : knowing or perceiving something within oneself or a fact about oneself * * * b : recognizing as factual or existent something external * * * 5 a : having rational power : capable of thought, will, design, or perception * * * 7 : mentally active : fully possessed of one's mental faculties : having emerged from sleep, faint, or stupor : AWAKE <the patient becoming ~ as the anesthesia wears off>"

*Webster's Third New Int'l Dictionary* 482 (unabridged ed 2002) (boldface omitted). That definition associates consciousness with a wakeful state and implies that a person in a state of sleep cannot execute a conscious action.

That understanding is consistent with the pertinent legislative history. The commentary accompanying the 1971 substantive criminal code revisions explains that ORS 161.095(1)

> "enunciates the basic principle that, no matter how an offense is defined, the minimal requirement for criminal liability is conduct which includes a 'voluntary' act or omission. This excludes all 'involuntary' acts such as reflex actions, acts committed during hypnosis, epileptic fugue, etc."

Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 11 Commentary (July 1970) (providing comments to §§ 7, 8). That explanation discloses a legislative intent to exclude from the definition of voluntary acts any acts that are taken when a person is sleeping.

In drafting the criminal code's liability requirements, the legislature looked to analogous provisions of the Model Penal Code. Model Penal Code section 2.01 is the counterpart of ORS 161.095(1), and requires proof of volition to establish criminal liability. Section 2.01 provides examples of what is *not* a voluntary act. Those examples include a reflex or convulsion, a bodily movement during unconsciousness or sleep, conduct during or resulting from hypnosis, and movement that otherwise is not a product of the effort or determination of the actor.[3] The commentary to section 2.01 clarifies that while "unconsciousness" may imply collapse or coma, there are "states of physical activity where self-awareness is grossly impaired or even absent,"—*i.e.*, what the commentary refers to as states of active automatism—that are subsumed within the meaning of the term. American Law Institute, Model Penal Code Comments § 2.01, 121 (Tentative

---

[3] The American Law Institute, Model Penal Code, section 2.01, 24 (Proposed Official Draft 1962) provides:

"(2) The following are not voluntary acts within the meaning of this Section:

"(a) a reflex or convulsion;

"(b) a bodily movement during unconsciousness or sleep;

"(c) conduct during hypnosis or resulting from hypnotic suggestion;

"(d) a bodily movement that otherwise is not a product of the effort or determination of the actor, either conscious or habitual."

Draft No. 4 1955). The commentary explains that sleepwalking activity "should receive the same treatment accorded other active states of true automatism." *Id.* at 122. Thus, as the text and commentary suggest, the drafters of the Model Penal Code understood a person engaged in sleepwalking to lack the level of consciousness necessary for a volitional act.

Furthermore, the commentary to Model Penal Code section 2.01 states that criminal liability must be based on conduct that includes a voluntary act because

"[t]he law cannot hope to deter involuntary movement or to stimulate action that cannot physically be performed; the sense of personal security would be short-lived in a society where such movement or inactivity could lead to formal social condemnation of the sort that a conviction necessarily entails. People whose involuntary movements threaten harm to others may present a public health or safety problem, calling for therapy or even for custodial commitment; they do not present a problem of correction."

American Law Institute, Model Penal Code Comments § 2.01, 119 (Tentative Draft No. 4 1955). *See also* Wayne R. LaFave, 1 *Substantive Criminal Law* § 6.1(c), 425-26 (2d ed 2003) ("The deterrent function of the criminal law would not be served by imposing sanctions for involuntary action, as such action cannot be deterred."). In sum, the deterrent function of criminal sanctions and basic fairness are not served by punishing a person whose acts are the result of unconscious movement because the person committed those acts while sleeping. Thus, in enacting ORS 161.095(1), the legislature requires proof of a voluntary act for criminal liability to attach.

C.  *Operation of ORS 161.095(1) in DUII prosecutions*

We next address the state's argument that ORS 161.095(1) requires that the prosecution only prove that defendant engaged in "*a* voluntary act," which, in the state's view, does not require that the voluntary act be limited to *driving* for purposes of a DUII prosecution. The state contrasts the text requiring "*a* voluntary act" with the text of ORS 161.095(2), which requires proof of a "culpable mental state with respect to *each* material element of the offense

that necessarily requires a culpable mental state." (Emphasis added.) In the state's view, the former text requires only proof of a single voluntary act that connects to *any* of the elements of DUII, while the latter text implies that proof of a culpable mental state may be required for *each* element. The state points out that defendant voluntarily consumed alcohol resulting in his intoxication, and asserts that that conduct, which is linked to the intoxication element of DUII, satisfies the voluntary act requirement.

We disagree. Although intoxication is an element of the DUII offense, it is not the proscribed conduct; it is a condition necessary to establish the offense. The voluntary act that ORS 161.095(1) requires must be linked not to a condition but to proscribed conduct. That does not mean, however, that the only relevant voluntary act is the act of driving. The commentary to the Model Penal Code indicates that the voluntary act may occur prior to the proscribed act as long as it is related to it. That is to say, although a prior voluntary act may suffice, not merely *any* act, however tenuously related, is sufficient. As the commentary to section 2.01 explains:

> "It will be noted that the formulation does not state that liability must be based on the voluntary act or the omission *simpliciter*, but rather upon conduct which *includes* such action or omission. The distinction has some analytical importance. If the driver of an automobile loses consciousness with the result that he runs over a pedestrian, none of the movements or omissions that accompany or follow this loss of consciousness may in themselves give rise to liability. But a prior voluntary act, such as the act of driving, or a prior omission, such as failing to stop as he felt illness approaching, may, under given circumstances, be regarded as sufficiently negligent for liability to be imposed. In that event, however, liability is based on the entire course of conduct, including the specific conduct that results in the injury."

American Law Institute, Model Penal Code Comments § 2.01, 120 (Tentative Draft No. 4 1955) (emphasis in original). Professor LaFave similarly expresses that point:

> "Although a voluntary act is an absolute requirement for criminal liability, it does not follow that every act up to the moment that the harm is caused must be voluntary.

Thus, one may be guilty of criminal homicide (or battery) even though he is unconscious or asleep at the time of the fatal (or injurious) impact, as where *A*, being subject to frequent fainting spells, has such a spell while driving his car (or, after the becoming aware that he is sleepy, continues to drive and falls asleep at the wheel), with the result that the car, out of control, runs into and kills (or injures) *B* while *A* is unconscious or asleep. Here, *A*'s voluntary act consists of driving the car * * *."

LaFave, 1 *Substantive Criminal Law* § 6.1(c) at 429 (internal footnotes omitted). Under that formulation, a defendant may be held criminally liable for a prior voluntary act if that act, through a course of related and foreseeable events, results in proscribed conduct.

In this case, the jury was required to find that defendant engaged in a volitional act that led to the proscribed act of driving, but was permitted to consider evidence that defendant engaged in volitional acts other than the act of driving. For instance, the jury could have considered evidence that defendant engaged in the volitional act of drinking, if there were evidence that drinking led to the driving. However, the jury also could have concluded that defendant's "sleep driving" would have occurred without regard to whether he consumed alcohol and, thus, that defendant did not engage in a voluntary act which led to the act of driving.[4]

However, the sufficiency of the evidence of a volitional act is not the issue on appeal. The issue presented is whether defendant was entitled to adduce evidence that he did not commit a voluntary act by driving on the night in question.[5] The evidence defendant proffered was relevant to that issue.

---

[4] We note that ORS 161.095(1) provides that criminal liability may be imposed when conduct includes either a voluntary act "or the omission to perform an act which the person is capable of performing." Here, defendant's proffered testimony was that he had not, to his knowledge, engaged in "sleep driving" prior to this incident. On remand, if the state produces evidence to the contrary, a jury could conclude that defendant's failure to take adequate precautions was an omission to perform an act defendant is capable of performing under ORS 161.095(1) and, if supported by the evidence, that that failure to act led to the driving.

[5] Sleepwalking disorder has been described as a condition that is distinct from the effects of intoxication. *See* DSM-IV-TR at 587-88 ("Sleepwalking Disorder should not be diagnosed if the behavior is due to the direct physiological effects

We conclude that the text, context, and legislative history of ORS 161.095(1) demonstrate a legislative intent to require that a defendant committed a voluntary act with respect to the driving element of DUII. This court's case law is not to the contrary. Although the courts below cited *Miller*, 309 Or 362, in excluding defendant's proffered "sleep driving" evidence, *Miller* did not address the volitional act requirement of ORS 161.095(1). In *Miller*, the court examined how other statutes—namely ORS 161.095(2) and ORS 161.105—operate with respect to the offense of DUII in determining whether a defendant may be convicted of DUII without proof of a culpable mental state when under the influence of an intoxicant. The court concluded that the "being-under-the influence-of-an-intoxicant element of DUII, ORS 813.010, requires no proof of a culpable mental state." *Id.* at 371. However, the court did not consider how the voluntary act requirement of ORS 161.095(1) applies to the driving element in a DUII prosecution. *Miller* simply did not address the issue of volitional driving presented in this case.

To summarize: We hold that the minimal voluntary act requirement of ORS 161.095(1) applies to the driving element of DUII in this case. Here, the trial court erred in not allowing defendant to adduce evidence that he was not conscious when he drove on the evening in question. The state was entitled to present evidence that defendant's drinking or other volitional act resulted in defendant driving his vehicle that evening. As noted, the state may also show a voluntary act with evidence that defendant had engaged in "sleep driving" prior to this incident and failed to take adequate precautions to remove access to his car keys. *See State v. Newman*, 353 Or 632, 645 n 4, 302 P3d 435 (2013).

### III. DISPOSITION

As previously noted, the trial court concluded that defendant's sleepwalking evidence was irrelevant to any issue in controversy and therefore excluded the evidence. As this court has explained, evidence is relevant "so long as it

---

of a substance (e.g., a drug of abuse, a medication) or a general medical condition * * *."). While sleepwalking can be induced by substances or medications, such a condition is diagnosed separately under the DSM-IV-TR as "Substance-Induced Sleep Disorder." *Id.* at 591.

increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action." *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999); *see also* OEC 401. Here, contrary to the trial court's ruling, defendant's proffered evidence was relevant as tending to show that defendant did not voluntarily drive his vehicle as required to establish liability for the offense of DUII. Thus, the trial court erred in excluding the evidence.[6]

Nonetheless, this court will not reverse a trial court's erroneous decision to exclude evidence if the error is harmless. Under Article VII (Amended), section 3, of the Oregon Constitution,[7] an evidentiary error is "harmless" if there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 27-28, 77 P3d 1111 (2003). Here, defendant's "sleep driving" evidence tended to rebut an essential element of the state's case. Had a jury been allowed to hear that evidence, it may well have concluded defendant did not commit a voluntary act that led to his driving and acquitted him. It may well be that a jury would reject defendant's evidence as unconvincing. However, it is not for us to make this determination but rather a question for a jury to determine. Thus, we cannot say there is little likelihood that the error affected the verdict

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[6] Based on our disposition, we do not find it necessary to reach defendant's additional arguments on appeal.

[7] Article VII (Amended), section 3, of the Oregon Constitution provides, in part:

"If the supreme court shall be of opinion * * * that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"