Submitted June 26, 2013, affirmed August 19, 2015, petition for review denied January 14, 2016 (358 Or 529)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TERRIANNE HESS,
*Defendant-Appellant.*

Multnomah County Circuit Court
101050900; A148263

353 P3d 1247

Peter Gartlan, Chief Defender, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Edmonds, Senior Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for seven counts of first-degree animal neglect and 38 counts of second-degree animal neglect that were based on defendant's failure to provide minimum care for her cats. Defendant first contends that the trial court erred by excluding expert testimony that defendant suffers from Obsessive Compulsive Personality Disorder (OCPD), which compelled her to acquire cats for which she was unable to provide minimum care, and, thus, she did not act voluntarily as required to impose criminal liability under ORS 161.095. Because the evidence that defendant sought to introduce did not bear on whether defendant lacked the capacity to perform the physical acts required to care for her cats, we conclude that the proffered evidence was not relevant on the basis on which defendant offered it, and, hence, that the court did not err in excluding it. Defendant also assigns error to the court's refusal to give her proposed jury instruction on the voluntary-act requirement for criminal liability. We reject that assignment because defendant's proposed jury instruction misstated the applicable law. For the reasons stated in *State v. Nix*, 355 Or 777, 334 P3d 437 (2014), *vac'd*, 356 Or 768, 345 P3d 416 (2015), we also reject an assignment of error to the court's failure to merge into a single conviction the guilty verdicts on the 45 counts of animal neglect. Finally, we do not reach defendant's two remaining assignments of error because they are moot. Accordingly, we affirm.

The facts are undisputed. Animal control officials received a report that defendant was neglecting her cats. Local police conducted a welfare check and, with defendant's consent, entered her duplex. Defendant's duplex reeked of urine, and the cats were covered with fleas. Cat feces covered the carpet, sink, and dishwasher. A city housing inspector examined defendant's duplex and determined that it was unfit for human habitation. The police further determined that defendant's 38 cats were living in unsanitary conditions. After speaking to a representative of the Oregon Humane Society, defendant relinquished ownership of her cats. A veterinarian examined the cats and found that they were underweight, anemic, and severely flea infested. Police also found seven dead cats in the duplex. The veterinarian

concluded that those cats had died from the combined effects of anemia, which was caused by the fleas, and starvation. The state charged defendant with seven counts of first-degree animal neglect for the cats that had died[1] and 38 counts of second-degree animal neglect for the cats that were living when they were taken into care.[2]

Before trial, defendant told the trial court that she intended to call a psychologist, Miller, to testify that she suffers from OCPD. Miller testified in a pretrial offer of proof that he had diagnosed defendant with OCPD and with borderline intellectual functioning. Miller explained how those diagnoses affected defendant's ability to act voluntarily:

"A Well, OCPD, the personality disorder is similar to the Axis I diagnosis obsessive compulsive disorder, in that people are—have a compulsive need to complete certain behaviors that are out of their control. In the case of the

---

[1] ORS 167.330(1) (2009), *amended by* Or Laws 2013, ch 382, § 4, established the crime of first-degree animal neglect. It provided:

"A person commits the crime of animal neglect in the first degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence fails to provide minimum care for an animal in the person's custody or control and the failure to provide care results in serious physical injury or death to the animal."

ORS 167.310(7) (2009), *amended by* Or Laws 2013, ch 382, § 3, provided, in turn:

"'Minimum care' means care sufficient to preserve the health and well-being of an animal and, except for emergencies or circumstances beyond the reasonable control of the owner, includes, but is not limited to, the following requirements:

"(a) Food of sufficient quantity and quality to allow for normal growth or maintenance of body weight.

"(b) Open or adequate access to potable water in sufficient quantity to satisfy the animal's needs. * * *.

"(c) For a domestic animal * * * access to adequate shelter.

"* * * * *

"(e) For a domestic animal, continuous access to an area:

"* * * * *

"(C) Kept reasonably clean and free from excess waste or other contaminants that could affect the animal's health."

[2] ORS 167.325(1) (2009), *amended by* Or Laws 2013, ch 719, § 4, established the crime of second-degree animal neglect. It provided:

"A person commits the crime of animal neglect in the second degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence fails to provide minimum care for an animal in such person's custody or control."

personality disorder, there's little to no insight into the nature of those behaviors being damaging to themselves or to others or distressing to them, whereas in the Axis I diagnosis there is some insight that their behaviors are distressing to them.

"* * * * *

"Q   Could that OCPD affect your ability to act voluntarily in certain situations?

"A   Yes.

"Q   And, could that have been the case in [defendant's] particular case?

"A   Yes, it could be.

"* * * * *

"Q   And is it your opinion that [defendant's] diagnosis of obsessive compulsive personality disorder could have affected her ability to act voluntarily in regards to the charges?

"A   Yes. That in itself and complicated by her low intelligence, which would most likely affect her ability to make decisions, to think through her decisions."

In questioning by the trial court, Miller clarified:

"Well, partly what fuels it, particularly with hoarders, is there's some need to be needed or connected to something or somebody. And it's like filling an empty hole emotionally. I think that's sort of how the hoarding takes over. I believe she was trying to take care of the cats, she was apparently bringing home a bag of kitty litter the day she was arrested. So she was attempting to fill the [litter] boxes at once, told Mr. Gonzales that—she reported to him that she woke up and all three [litter] boxes were full, kind of like it's a mystery to her.

"She excused or explained some of the filth by her vacuum cleaner broke, she needed to shampoo the carpet, and there was a toxic mold in the house and it was a mess. But it [was] this filthy thing that a police officer couldn't stand in for five minutes and she was living in this. And that's one of the reasons I put possibility of brain damage.

"I don't know what kind of toxic environment was there which may have affected her brain and her thinking and

decision making, so I think she was kind of delusional about explaining this to herself, which kept her going, which serviced the obsessive compulsive phenomenon, if you will."

Miller did not testify that defendant's OCPD rendered her incapable of caring for her cats—indeed he testified that defendant had a compulsive need to care for them and was trying to do that—rather his testimony focused on defendant's capacity to think through her decisions or have insight into them.

Defendant contended that Miller's testimony was relevant because the state was required to prove that defendant met the requirement for criminal liability in ORS 161.095, which states that the "minimal requirement for criminal liability is the performance by a person of conduct[,] which includes * * * the omission to perform an act [that] the person is capable of performing." In her view, Miller's testimony tended to show that defendant's actions were compelled and, hence, were not within her control. Consequently, defendant asserted, the testimony was relevant because it constituted evidence to support a finding that defendant's inability to provide for her cats was involuntary and, hence, to acquit her of the charges.

After hearing the offer of proof, the trial court excluded the proposed testimony on the ground that it did not give rise to a legal defense. The court reasoned that, although Miller's testimony offered insight on why defendant ended up in her situation, it could not be used to show that defendant's acts were involuntary because there was nothing in the law that suggested that psychological evidence was admissible to prove that a defendant had not acted voluntarily.

At trial, defendant testified that she did everything that she could for her cats but that she did not have the financial means to feed and care for all of them. Relying on that testimony, defendant asked the court to instruct the jury that "an act is voluntary if the actor has [the] ability to choose whether to commit [the] act that gives rise to criminal liability," justifying that request on the ground that

"[o]ne of the things that the State is arguing is that she is guilty of the crime for not taking the pets into the

veterinarian, which I believe is one of the things they are going to argue * * * that's an omission. But whether somebody has the ability to choose to take—has the ability to choose to take a pet to the veterinarian or not, could be a question. I think it definitely is here. She testified that she didn't have the ability to take them to the vet, for financial reasons."

The trial court refused to give the proposed instruction because the case involved "an omission [rather] than an act," and, consequently, defendant's proposed jury instruction, which defined a voluntary act rather than an omission, "is more confusing than helpful." However, the trial court did instruct the jury on the voluntary-act requirement for criminal liability by including the text of ORS 161.085(2) in its instructions. The court allowed defendant to argue to the jury that her omissions in providing care for her cats were not voluntary because she did not have the ability to care for them. The jury ultimately found defendant guilty of all 45 counts of animal neglect.

Defendant contended at sentencing that all of the guilty verdicts should merge into a single conviction because the cats were her property and, thus, not victims, leaving only one victim of her crimes—the public. The trial court disagreed, reasoning that the animal-neglect statutes were enacted to protect animals, thus making each cat a victim for purposes of subsection (2) of the anti-merger statute, ORS 161.067. The court entered a judgment of conviction on all 45 counts, imposing probation and a $5,000 compensatory fine. On appeal, defendant renews her arguments on the exclusion of Miller's testimony, the jury instruction, and the merger of her convictions.

We begin with whether the court erred in excluding Miller's testimony on the ground that it was not relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. We review decisions on the relevance of evidence for legal error. *E.g.*, *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

Although never fully stated, defendant's argument on appeal necessarily is that her OCPD caused her to

involuntarily acquire and keep more cats than she could care for financially, and, thus, her OCPD rendered her incapable of providing minimum care for her cats. She contends that Miller's testimony that she had a compulsion to acquire and keep cats tended to establish that she was not capable of performing the acts required to provide her cats with minimum care—*viz.*, to feed, house, and clean up after them.

We begin with ORS 161.095(1), which provides that the "minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing." That statute sets out two alternate requirements—either the person must perform a voluntary act or the person must fail to perform an act that the person is capable of performing. "Voluntary act" is defined as "a bodily movement performed consciously." ORS 161.085(2). "Act," in turn, is defined as a "bodily movement." ORS 161.085(1). Thus, where criminal liability is premised on a defendant engaging in a voluntary act, the defendant must consciously perform a bodily movement. Conversely, where criminal liability is premised on a failure to act, the defendant must fail to perform a bodily movement that the defendant is "capable of performing." Although the latter requirement focuses on the physical capacity to act,[3] implicit in the requirement is the capacity of the defendant to exert conscious control over the defendant's bodily movements. Hence, for example, a person who suffers an epileptic seizure will not be criminally liable under ORS 161.095(1) for striking another person during the seizure nor for failing to perform a physical act during the seizure. Here, because defendant's convictions stemmed from her failure to provide minimum care for her cats, we must focus on the omission portion of the statute to determine if Miller's testimony was relevant.

---

[3] *See* American Law Institute, Model Penal Code and Commentary (Official Draft and Revised Comments) § 2.01, at 214 (1985 ed) (stating that the voluntary act requirement requires that criminal liability include "a voluntary act or the omission to perform an act of which defendant was physically capable."); *see also State v. Newman*, 353 Or 632, 643, 302 P3d 435 (2013) (discussing Model Penal Code and Commentary section 2.01 with regard to voluntary act requirement in ORS 161.095(1)).

The difficulty with defendant's argument is that Miller's testimony did not speak to defendant's physical capability to perform any of the acts—*viz.*, bodily movements—that the state alleged that defendant had failed to perform. For example, he did not testify that defendant's OCPD rendered her unable to clean or leave the house or to obtain cat food. Instead, Miller testified that defendant was compelled to acquire and keep cats, and that those actions might not be voluntary—*viz.*, consciously done. Evidence showing that defendant felt compelled by her OCPD to acquire a large number of cats does not tend to prove that defendant was incapable of performing the bodily movements required to provide her cats with minimum care. Hence, Miller's testimony was not relevant on the basis on which it was offered, and the trial court did not err in excluding it.

We turn to defendant's proposed jury instruction. We review a trial court's refusal to give a defendant's requested jury instruction for legal error. *E.g.*, *State v. Moore*, 324 Or 396, 427, 927 P2d 1073 (1996). "A party is entitled to have the jury instructed on the law [that] supports [the party's] theory of the case where there is evidence to support that theory and the party submits an instruction that correctly states the law." *State v. Castle*, 48 Or App 15, 19, 616 P2d 510 (1980).

Defendant assigns error to the court's refusal to give her proposed voluntary act instruction, which stated that "an act is voluntary if the actor has the ability to choose whether to commit an act that gives rise to criminal liability." She posits that she was entitled to the jury instruction because she presented evidence from which the jury could find that she did everything that she could to care for her cats, but that she was financially unable to provide them with adequate care. The state responds that the trial court "gave a correct and complete instruction" defining a voluntary act and, therefore, did not err in refusing to give defendant's proposed instruction.

The trial court did not err by refusing to give defendant's proposed jury instruction because the instruction misstated the relevant law. As previously noted, ORS 161.085(2) defines a "voluntary act" as "a bodily movement

performed consciously." Defendant's proposed instruction differs substantively from that definition because the proposed instruction omitted the requirement that defendant "consciously" perform the voluntary act and instead stated that an act is voluntary only if the defendant could "choose" to perform it. There is a meaningful difference between consciously performing an act and choosing to perform it. To make a choice, a person must be confronted with alternative courses of action. However, a defendant can consciously perform an act in the absence of alternatives. In sum, defendant's proposed instruction did not accurately state the relevant law when it stated that an act is voluntary only if the defendant could choose to perform it. Hence, the court did not err by refusing to give defendant's proposed instruction and instead instructing the jury using the statutory definition of the term "voluntary act."

Defendant also assigns error to the trial court's failure to merge the guilty verdicts on the 45 animal-neglect counts into a single conviction for first-degree animal neglect. Defendant argues that the trial court erred in concluding that each animal was a separate victim for purposes of Oregon's anti-merger statute, ORS 161.067(2), which provides that, "when the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims." The state responds that the trial court did not err in refusing to merge defendant's guilty verdicts, relying on *Nix*, 355 Or at 798.

In *Nix*, the Supreme Court addressed and rejected the same argument that defendant makes on appeal. *See Nix*, 355 Or at 797. However, the court ultimately vacated its decision in *Nix* because it concluded that it did not have jurisdiction of the appeal. *Nix*, 356 Or at 782. Although the court vacated its decision in *Nix*, we nonetheless are persuaded by the *Nix* court's reasoning on the merger question, and we adopt it. Hence, we conclude that the trial court did not err in entering convictions on all 45 of the animal-neglect counts.

Finally, defendant raises two assignments of error that she concedes are unpreserved. First, she contends that

the trial court erred in ordering her to pay a $5,000 compensatory fine without also ordering her to pay a punitive fine. Second, she contends that trial court erred in imposing a probation condition that affected her right to be protected against unreasonable search and seizure. After defendant filed her opening brief on appeal, the trial court entered an amended judgment that imposed a $5,000 punitive fine and removed as a probation condition the search-and-seizure condition about which defendant complains. The amended judgment renders defendant's remaining assignments of error moot. *See, e.g., Brumnett v. PSRB,* 315 Or 402, 404-07, 848 P2d 1194 (1993).

Affirmed.